B———— L———— C———— (K), Appellant,

v.

W———— W———— C————, Respondent.

No. KCD 29766.

Missouri Court of Appeals,
Kansas City District.

July 3, 1978.

F. Keith Brown, Russell, Brown, Bickel & Breckenridge, Nevada, for appellant.

Edward J. Murphy, Butler, for respondent.

Before SHANGLER, P. J., and SWOFFORD, C. J., and WASSERSTROM, J.

SHANGLER, Presiding Judge.

This appeal is from an order of modification which transfers permanent custody of the child, G., from the mother to the father. The parties, B.C. [now K.] and W.C., were divorced in November of 1973. The mother was granted permanent custody of the child and $120 per month for her support, later modified to $65 per month. The father then brought the present motion to modify custody on the allegation the immoral conduct of the mother renders her no longer fit. The mother brought a concurrent motion to increase child support.

The mother remarried one D. and some time in early 1977 that marriage became tempestuous. D. drank excessively and practiced physical and vocal abuse upon the wife. This caused emotional upset in the child who lived with them. The mother and D. separated and in February of 1977, they commenced a dissolution proceeding. About that time, according to the mother, she was befriended by K. [her present husband] who offered his protection against the continued threats by D. She admitted that she shared his quarters with him on several occasions and had the use of them a few times when he was away from the city, but denied any intimacy with him. The dissolution of the marriage with D. was adjudicated the following month—in March of 1977.

In early February of 1977, J.C., paternal grandfather of the child G., became disturbed by what he discerned as an emotional upset in his granddaughter and by her remark that she "didn't have a bed to sleep in." She ordinarily slept with her mother, "but some man had came [sic] and she had to sleep on the couch." The grandfather undertook personal surveillance of the K. residence—morning and night—which he meticulously recorded. He observed the mother and G. arrive at the K. residency in the afternoon by taxicab and leave by the same means the next morning. Then K. himself came out from the dwelling. These events were repeated for several days and intermittently thereafter.

The concern of the grandfather was such that he requested the Division of Family Services to investigate the homelife of the child and her emotional and physical states. The case worker—after interviews with the parents, V.C. [the new wife of the father of the child], babysitters and those others with opportunity to observe the child—concluded that G. had been subjected to emotional abuse. The child, then five years of age, although of normal intelligence, had scored very low on the kindergarten placement test and had made little progress throughout the school year. The case worker reported that services had been offered to the mother and child but that the mother had not responded.

The juvenile officer had also investigated the complaint at the instance of father and grandfather. The child told him that "she was at another house besides where she lived and that she slept on the couch and a man, she said 'G.,' and her mother slept in the other room."

At the conclusion of the evidence the court entered judgment which denied the motion of the father for change of custody and sustained the concurrent motion of the mother to modify the child support payments and increased that award from $65 per month to $100 per month. The judgment was accompanied by a memorandum—in the nature of findings and by way of explanation. The memorandum recited, among other things, that although the conduct of the mother was "at best indiscreet, at the worst immoral," there was no evidence the child saw the mother in any unseemly intimacy. The memorandum noted that the emotional upset she suffered was attributable, not to the conduct of the mother with K., but to the turmoil with husband D. and to the present custody dispute. The memorandum concluded that the child was well kept by the mother, was progressing well in schoolwork and, that the circumstances did not justify that the child be uprooted.

Two weeks later, the trial court on its own initiative, set aside the judgment, ordered an investigation on the custodial arrangements for the child under § 452.390, and reopened the case to receive the report and any other evidence the parties chose to offer. The court gave as cause that: "I am not satisfied with my [previous] order."

The investigation was made and the report received in evidence. The parties offered no further proof. The substance of the report disclosed that the mother and K., married since the original judgment, had established residence nearby in Kansas, where the family has lived comfortably and contentedly. The child was reported in a stable home environment, emotionally and physically, doing well in school and otherwise happy and adjusted.

The court entered a new judgment which sustained the motion to modify and ordered that the permanent custody of the child be transferred from the mother to father. The mother was accorded regular periods of visitation as well as extended periods of temporary custody during the summer school vacation time. The father was relieved of liability for child support payments except during the period of extended summer visitations.

On this appeal the mother contends the order for change of custody was an abuse of discretion in that no evidence was before the court subsequent to the first entry of judgment which contradicted the findings and reasons given for that rendition. The mother contends also that, in any event, there was no substantial evidence to support the modification of custody.

■ The argument rests on the erroneous assumption that each entry of judgment was a final adjudication so that the subsequent judgment cannot stand without separate evidence of change of circumstance for support. A judgment vacated by a trial judge within the propriety of Rule 75.01 loses all efficacy as an adjudication. That rule provides:

> The trial court retains control over judgments during the 30 day period after entry of judgment and may vacate, *reopen*, correct, amend or modify its judgment *for good cause* within that time. · · · [Emphasis added]

■ In this instance, the trial court, within thirty days of rendition, expressed dissatisfaction with his decision and determined to "re-open the case and order an independent investigation." The effect of such an order, when made timely and on good cause, is to restore control of the full proceedings to the trial court until that exercise of jurisdiction culminates in a final and appealable order. *In re Marriage of Richardson*, 540 S.W.2d 227, 229[5] (Mo.App. 1976).

■ In circumstances when a court has the solemn duty to decide the custody of a child, it serves the ends of justice for a

tribunal, beset by doubt as to the true evidence—as in this case—to reopen the proceedings for independent proof and further opportunity to the parties for testimony. Although the *good cause* element of Rule 75.01 does not allow precise definition, it obviously intends a remedial purpose and is applied with discretion to prevent a manifest injustice or to avoid a threatened one. *Vaughn v. Ripley*, 416 S.W.2d 226, 227[1–4] (Mo.App.1967); *Kallash v. Kuelker*, 347 S.W.2d 467, 471[4] (Mo.App.1961); *Tucker v. St. Louis Life Ins. Co.*, 63 Mo. 588, 593 (1876). Accordingly, the order of the court to set aside the first judgment for the investigative report as a basis for a more informed award of custody was on good cause and restored control of the full proceedings to the trial court.

█ The contention that the final judgment to transfer custody from the mother to the father was without support of substantial evidence is not tenable. It is to be acknowledged that the investigative report done by order of the court found the child restored to a normal emotional and physical state and that the mother and K., her third husband, had established a desirable domestic environment for the upbringing of the child. It is to be acknowledged also that the retarded learning of the child and her agitated condition were coincident with the strife between her mother and husband D. and improved to normal once that condition was relieved. In short, the evidence available to the court *after* the case was reopened, if anything, enhanced the claim of the mother to restoration of fitness for custody of the daughter.[1] Nevertheless, the trial court was entitled to consider *all* the evidence on that issue—and that included the flagrant and repeated misconduct of the mother with K. in the presence of the child. It was that episode which the trial judge described as "very serious indeed" when he rendered the first judgment and, from what appears, the possible recurrence of such conduct was the consideration which prompted the investigation and report.

The choices open to the court were in any event imperfect. The mother now barely twenty-seven years of age has now been remarried for the third time as has her third husband. The father [presumably of comparable age] has now also been married for the third time to a woman previously married. There have been children born to each of these marriages for which the latest spouse has either the duty of support or the actual custody. Neither parent has demonstrated the capacity for the enduring family relationship in which a growing child flourishes.

We understand the judgment to transfer the custody from the mother to the father as the reluctance of the trial court to further burden the welfare of the child by placement with a parent whose conduct has been so irresponsible in that regard. That determination was for the trial court in the first instance. It rests on substantial evidence and we are bound to affirm that judgment. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

All concur.

---

1. There was no objection that the investigative report was not evidence. We are not to be understood to hold that such a report has the effect of substantive evidence in the absence of a stipulation to that effect or proof by witnesses in the ordinary manner.