In re the MARRIAGE OF WILLIAMS.

Gregory D. WILLIAMS, Petitioner–Respondent,

v.

Donna S. WILLIAMS, Respondent–Appellant.

No. 18135.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 7, 1993.

Motion for Rehearing or Transfer Denied Jan. 29, 1993.

Application to Transfer Denied March 23, 1993.

---

6. Footnote 4, *supra*.

Christina L. Mell, L. Dwayne Hackworth, Piedmont, for respondent-appellant.

Kelly W. Parker, Wilkerson & Seay, Salem, for petitioner-respondent.

SHRUM, Judge.

In this domestic relations case, Gregory D. Williams (the husband) obtained a default judgment dissolving his marriage to Donna S. Williams (the wife), awarding him custody of their minor daughter, awarding child support to be paid by the wife, and dividing marital property. Thirteen days after the default was entered, the wife filed a verified motion in which she alleged the default judgment was obtained by fraud. She pled that the best interests of their child required that primary custody be placed with her, it was detrimental to the child for her to be with the husband, and that the decree failed to distribute certain marital property.

Following an evidentiary hearing[1] the trial court refused to set aside the default judgment. The wife appeals.

The single issue is whether the trial court erred in denying the wife's request, made pursuant to Rule 74.05(c), to set aside the default judgment.

We answer the question in the negative and affirm the judgment.

FACTS

The parties were married June 17, 1977. On October 4, 1991, the husband filed a petition for dissolution of their marriage. The petition and accompanying summons were served on the wife on October 31, 1991. She did not timely respond to the petition or summons. On December 10, 1991, the husband filed a notice of his intention to present his case as a default matter on December 18. A copy of the notice was received by the wife on December 12 or 13, 1991. The notice prompted the wife to recontact her lawyer in St. Louis.[2] She paid the St. Louis lawyer additional money and was told by him that he would "take care of court on December the 18th," that she did not "have to go," and "it would be postponed."

On December 17, 1991, the wife's lawyer sent an answer and cross-petition to the circuit clerk by fax transmission. This he did without furnishing the husband's lawyer a fax copy, without contacting the husband's lawyer, and without obtaining leave of court to file the out-of-time pleadings.

The next morning, December 18, 1991, the husband appeared in court with his lawyer. When court opened, the wife was present in the courtroom. At a later hearing the wife testified about her presence there and about the December 18 events as follows. She was in Dent County because she attended her daughter's Christmas program on the evening of December 17. She spent the night with her daughter and then

---

1. The wife's counsel on appeal is not the lawyer initially hired by her and is not the lawyer who filed the motion to set aside the default. Her appeals court lawyer was hired after the default occurred and after the motion to set aside the default was filed.

2. The wife first hired her St. Louis lawyer in September 1990 because of marital discord at that time.

took her to school the next morning. Being so close, the wife decided to go by the courtroom. She heard the trial judge announce her case but then "heard him say something about recess." She assumed that "recess" meant it was postponed and she decided to leave.

She then met her husband on the courthouse steps. She told him she was leaving. Her husband asked her "why" and she answered, "[B]ecause my lawyer told me it was postponed." She and her husband then went to a coffee shop where they talked for 45 minutes. She recalled that most of the husband's conversation was about trying to get the family back together. The wife admitted her husband never told her that morning that a hearing would not be held—her lawyer told her that. Upon departing, the husband walked her to her car and she left for St. Louis.

On December 18, 1991, after their coffee shop meeting, the husband returned to the Dent County courtroom and he and his lawyer presented his case as a default matter. Before testimony was adduced the trial court noted that an attempted fax filing of an answer and counterclaim dated December 17, 1991, was in the file. The husband's counsel disavowed previous knowledge of the filing and told the court he had not received a copy nor had he been contacted by the wife's attorney. Noting that no request for leave to file an out-of-time answer had been made or granted, the trial court allowed the husband to proceed.

From the husband's evidence the trial court learned the wife was in Dent County at her daughter's school program the previous evening, that the wife had been in the courtroom earlier on the morning of December 18 but left to return to St. Louis, and that the husband and wife talked at the coffee shop. The trial judge questioned the husband at some length about the wife's actions. In part, that testimony was as follows:

THE COURT: Did you discuss with your wife last night that you would be presenting evidence here today?

A. (by the husband) It came up and she just turned me off. I mean just basically didn't want to talk about it?

THE COURT: Well, did you tell her you were coming to court today?

A. Yeah. Yes, sir. I mentioned it and she just turned, turned away from it so I just didn't pursue it any longer.

THE COURT: Have you done anything, Mr. Williams, to prevent your wife, Donna Sue Williams, from being in court here today?

A. No, sir.

During the trial court's interrogation of the husband, the latter question was repeated several times and the husband insisted he had done nothing to keep his wife from being present for the hearing. He also testified that upon leaving his wife said, "I guess it's over. I just wanted to see if you'd do it." Finally the trial court asked:

THE COURT: One more time, you did nothing to prevent her from being here. Did you tell her this morning that you were not going to take the case up and she could go on back and forget about it?

A. No, sir.

THE COURT: You told her you were here for the divorce, is that what you told her?

A. Maybe not in those words, sir.

THE COURT: What words did you use?

A. I told her that sometimes people get back together after they are divorced, is what I told her. I said—

THE COURT: You didn't mislead her that you were going to dismiss the case today?

A. No, sir.

THE COURT: You didn't tell her that you were going to tell your attorney not to present the case today?

A. No, sir.

The trial court questioned the husband about his daughter. In response to one of those inquiries, the husband testified his daughter was in "surprising" good physical and mental health. When asked why he used the phrase "surprising," the husband

replied, "Well ... you always hear things that kids would have emotional problems going through this, but she's kind of special...."

After hearing the evidence the trial court entered a decree which (a) dissolved the marriage, (b) awarded joint legal custody of the child to the parties but placed primary custody in the husband, (c) ordered the wife to pay $375 per month child support, and (d) divided marital property and assigned responsibility for paying debts.

Upon receiving a copy of the dissolution decree, the wife filed a motion to set aside the default. At a hearing on the motion her testimony included the following: She was served with the petition and summons. After being served with the summons but before receiving notice of the December 18 hearing, she was told by her husband that he filed the case to "scare" her into getting back together and he "didn't intend to really get the divorce." She admitted, however, that on December 18 the husband did not tell her "there was not going to be a hearing that morning."

As to other allegations in her motion, the wife testified, "I think he [the husband] was making more" than $100 per month;[3] "[h]e gets paid cash so it's real hard for me to tell." She also testified that they paid $120,000 for the Dent County farm, rather than $100,000 as testified to by the husband; they sold a house in St. Louis and none of the proceeds therefrom was mentioned in the December 18 decree. Her testimony revealed that the house in St. Louis was not titled in her and her husband's name; it was in the name of a family member but she and her husband spent approximately $25,000 remodeling the house.

The wife's testimony in support of the child custody issue consisted of the following: Upon separation she first lived with her parents. Under that living arrangement she allowed her daughter to stay with the husband but always intended to have her daughter with her as soon as she moved into her own place. By December 1991 the wife had moved into an apartment.

At the conclusion of the hearing, the trial judge observed that when the wife's St. Louis lawyer attempted a fax filing of an answer and counter-petition the 42nd judicial circuit had not adopted a local rule pertaining to fax filings of pleadings, and, in fact, had no such rule. The motion to set aside was taken under advisement and on April 21, 1992, the motion was denied. This appeal followed.

## DISCUSSION AND DECISION

The wife's motion to set aside the default judgment is based on Rule 74.05(c).[4] In her only point on appeal the wife contends the trial court erred "in denying [her] ... motion to set aside default judgment ... because [she] demonstrated facts constituting a meritorious defense ... and good cause ..." to set aside the judgment within the meaning of Rule 74.05(c).

■ Because we find that good cause for setting aside the default judgment was not demonstrated, we need not decide whether the wife demonstrated facts sufficient to show a meritorious defense. *Hughes v. Britt,* 819 S.W.2d 381, 383 (Mo.App.1991). The Rule 74.05(c) conditions, "good cause" and "meritorious defense," are in the conjunctive and even if a movant shows a meritorious defense, if good cause is not also established, the trial court does not abuse its discretion by failing to set aside the judgment. *Robson v. Willers,* 784 S.W.2d 893, 896[5] (Mo.App.1990).

---

3. On his income and expense statement and by his testimony on December 18, 1991, the husband's evidence was that his income was $100 per month. The wife's testimony was that he worked for his father.

4. In pertinent part Rule 74.05(c) reads: "Upon motion stating facts constituting a *meritorious defense* and for *good cause* shown ... a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." (Emphasis ours.)

*Good Cause*

■ The wife acknowledges in her brief that generally the question of whether a default judgment should be set aside is within the trial court's discretion. That discretion will not be disturbed on appeal unless abuse of discretion is found. *Hughes,* 819 S.W.2d at 383. However, she points to a refinement of that rule which says "[t]he discretion not to set aside is ... narrower than the discretion to set aside." *Id.* (quoting *Robson,* 784 S.W.2d at 894[1] ). *See also Moore v. Dahlberg,* 810 S.W.2d 730, 732 (Mo.App.1991). This is because of the distaste our system has for default judgments, a distaste that is especially strong in dissolution cases involving child custody. *Ramage v. Ramage,* 792 S.W.2d 432, 433 (Mo.App.1990) (quoting *In re Marriage of Wheeler,* 743 S.W.2d 605, 606[2] (Mo.App.1988)).

It has been noted that, although the *"good cause"* element of Rule 74.05(c) eludes "precise definition," it "obviously intends a remedial purpose and is applied with discretion to prevent a manifest injustice or to avoid a threatened one." *B__L__C__(K) v. W__W__C__,* 568 S.W.2d 602, 605[4] (Mo.App.1978). Good cause may be found where a trial court, faced with "the solemn duty to decide the custody of a child" is "beset by doubt as to the true evidence...." *Id.* at 604–05[3]. *See also In re Marriage of Gormley,* 813 S.W.2d 108, 111 (Mo.App.1991).

■ The wife argues that this record does not show intentional or reckless conduct on her part. Specifically, she claims she did not ignore the dissolution action, but, rather, upon receiving notice of the default hearing she re-contacted her lawyer, paid him additional fees, and received an assurance that her lawyer would take care of the matter. She says her lawyer's negligence in relying upon a fax filing of her pleadings does not show intentional or reckless conduct on her part. The wife points to the fact that she appeared in court on December 18, heard her case called and then the court recessed, leading her to believe the matter had been continued. She maintains the foregoing, when

coupled with the fact that she talked with her husband that morning, both at the courthouse and at the coffee shop, compels a finding that her conduct was not recklessly designed or intended to impede the judicial process. We disagree. In *Gibson by Woodall v. Elley,* 778 S.W.2d 851 (Mo.App.1989), the term reckless was examined in the context of Rule 74.05(c).

> The dictionary definition of "reckless" is, "lacking in caution: deliberately courting danger." *Webster's Third New International Dictionary,* 1896 (1971).

*Id.* at 854. Continuing its analysis of "recklessness" the *Gibson* court quoted from *Farm Bureau Town & Country Ins. Co. v. Turnbo,* 740 S.W.2d 232, 235 (Mo. App.1987), as follows:

> Recklessness differs from negligence also in kind. A person is negligent, if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency. Restatement, § 500, Comment g. To be reckless, a person makes a conscious choice of his course of action, "either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to any reasonable man." *Id.*

*Gibson,* 778 S.W.2d at 854.

Until the evening of December 17, the wife's conduct might charitably be viewed as merely negligent. However, on that evening, while in Dent County, she was told by her husband that he would be "presenting evidence" on his dissolution petition the next morning. Her response, as described by her husband was, "she ... turned me off ... just basically didn't want to talk about it." In the face of her husband's announced intentions concerning the case, the wife did nothing except appear at court the next day to see if he was going to go forward as he had told her. There is no evidence that, after talking with her husband, she tried to communicate with her lawyer to ascertain if the case had been continued. Instead, she attended court, heard the case called and, then, during a court recess, met her husband on the court-

house steps and told him she was leaving. Nothing in the record indicates that she made a single inquiry of anyone at the courthouse about the status of the dissolution case. During the court recess she had a 45–minute conversation with the husband during which she told him, "I guess it's over. I just wanted to see if you'd do it."

Although she testified she believed on December 18 that her lawyer had gotten the case continued and she viewed the trial court's declaring of a recess as meaning the case had been continued, the trial court was entitled to weigh such self-serving testimony about her undisclosed beliefs against her course of conduct and statements on that date. The wife was educated (a registered nurse). Marital problems were not new to her. She first contacted a lawyer about the problem in September 1990, over a year before the dissolution was filed. Her actions could well be viewed by a trial court as more than a series of mishaps but, rather, as conduct "lacking in caution" and as "deliberately courting danger" in the futile hope and expectation that the husband would not go forward with the case. This record supports the determination by the trial court that the wife was more than negligent, that she "ignored a known risk" of a default judgment and was thereby reckless.

We have examined various cases cited by the wife in her "good cause" argument and found that the facts distinguish them from this case.

For example, in *Moore*, 810 S.W.2d at 731–32, the Rule 74.05(c) motion was accompanied by affidavits of defendant's psychiatrist and parents which revealed that defendant suffered from mental or emotional problems which prevented her from fully comprehending the consequences of failing to take any action after the petition and summons were served on her. Such circumstance was held to satisfy the good cause requirement of Rule 74.05(c). No such facts exist in this case.

In *Plybon v. Benton*, 806 S.W.2d 520, 524 (Mo.App.1991), the Director of Revenue was served with a petition seeking circuit court review of his decision concerning plaintiff's driver's license. A local prosecutor was asked to represent the director at the hearing. Plaintiff filed a motion for default, the prosecutor did not appear, and default was taken. Based on undisputed evidence that the director was unaware of the filing of a motion for default judgment or that such a hearing had been held, the *Plybon* court found good cause to set aside the default. In contrast, here, the wife not only had knowledge of the default hearing, but appeared in court on the date of the hearing.

In *Clark v. Brown*, 814 S.W.2d 634 (Mo. App.1991), a trial court set aside a default judgment. We affirmed, finding no abuse of discretion. That finding does not dictate that we find an abuse of trial court discretion in this case. Each case is governed by its own facts. *Ramage*, 792 S.W.2d at 434.

*Ramage* was a domestic relations case in which child custody was involved. The mother's motion to set aside a default judgment contained allegations that the safety of a child was involved. *Id.* at 434. Because of the unique facts in *Ramage* we held that the trial court abused its discretion in refusing to set aside the default judgment. By contrast, the motion in this case contains no allegations of child abuse or neglect.

Furthermore, the wife's evidence concerning child custody failed to support her claim that an order placing custody of the child with the husband was detrimental to the child. Her allegations concerning the child's best interests were conclusionary in nature; they did not state facts or give reasons to indicate the child's best interests and welfare would better be served by an order placing custody with her. On this issue the wife's evidence consisted solely of (a) her explanation of why she consented to the child living temporarily with the husband, and (b) her statement that she intended to have the child live with her as soon as she was settled into her own living arrangement. Absent from this record is sufficient evidence or factual allegations to compel a finding, as a matter of law, that the trial judge should have been so "beset by doubt as to the true evidence"

on the child custody issue as to convict him of error when he refused to set aside the default judgment. *B___L___C___(K)*, 568 S.W.2d at 605[3].

Finally, the wife's reliance on *Saloma v. Saloma–Orozco*, 788 S.W.2d 799 (Mo.App. 1990), is misplaced. There, a default decree was set aside by a trial court after the husband alleged that his wife misled him to believe that she did not intend to proceed with the dissolution. The parties were living together at the time of the default hearing and on the date of the default hearing the husband was out of the country on business. On appeal, it was held that the trial court did not abuse its discretion in light of the allegations of fraud in procurement of the decree. In contrast, here, the wife admits that after being notified her husband was going to present his case as a default matter, the husband did nothing and said nothing to mislead her about his intent to proceed.

█ From this record the inescapable conclusion is that the trial court did not abuse its discretion in refusing to set aside the default judgment. The facts show the default judgment was the product of the wife's recklessness—her conscious choice of a course of action with knowledge of the serious danger that a default judgment could result. No manifest injustice results. For the most part, other remedies exist for the wife if she can produce evidence to support her complaints.[5] The point is denied.

The judgment is affirmed.

PARRISH, C.J., and CROW, P.J., concur.

---

5. On the issue of child custody, § 452.410 empowers a trial court to modify a custody decree "upon the basis of facts that have arisen since the prior decree or *that were unknown to the court at the time of the prior decree....*" (Emphasis ours.) On the property issues, we observe that a litigant is entitled to bring a separate action in equity to distribute marital property not considered by the trial court at dissolution. *Stein v. Stein*, 789 S.W.2d 87, 93 (Mo.App. 1990).