CBD ENTERPRISES, INC.,
Plaintiff–Respondent,

v.

BRACO MANUFACTURING, INC.,
Defendant–Appellant.

No. 26843.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 28, 2005.

Application for Transfer Denied
Nov. 21, 2005.

Application for Transfer Denied
Jan. 31, 2006.

John W. Rourke, Charles R. Vantine, St. Louis, for appellant.

John W. Grimm, Limbaugh, Russell, Payne & Howard, Cape Girardeau, for respondent.

KENNETH W. SHRUM, Presiding Judge.

CBD Enterprises, Inc. ("Plaintiff") obtained a default judgment against Braco Manufacturing, Inc. ("Defendant") on a breach of contract claim. Defendant moved to set aside the judgment (per Rule 74.05(d)), alleging it had a meritorious defense to Plaintiff's claim and there was good cause to set aside the judgment. The motion was overruled and Defendant appeals, charging the trial court abused its discretion by not setting aside the judgment. This court agrees. We reverse and remand with directions.

On October 15, 2003, Plaintiff sued Defendant, claiming that Defendant breached its contract with Plaintiff by (a) refusing to manufacture diapers for Plaintiff according to original specifications, and (b) "refus[ing] to refund the purchase price to [Plaintiff]."

Defendant's president, Jack Braha ("Braha") was served with the suit documents and summons on December 9, 2003.

However, Braha did not hire a lawyer to answer Plaintiff's suit at that point. Instead, he placed a call to Karen Turley ("Turley"), circuit court clerk of Mississippi County, Missouri, on January 5, 2004, and then faxed a letter to the circuit clerk on January 6, 2004. The letter, written on Defendant's letterhead, was denominated "Reply to Summons and Petition."

The two versions of what was said in the Braha to Turley telephone call on January 5, 2004, are as follows. In a post-judgment affidavit, Braha swore he asked Turley for "instructions on answering Plaintiff's Petition." Continuing, Braha testified Turley "instructed me to respond, i.e., answer the allegations set forth by Plaintiff, but made no mention of the requirement that corporations must appear by attorney." Braha concluded this part of his affidavit as follows: "I told Clerk Turley that I would be answering Plaintiff's Petition via letter on behalf of [Defendant]," but "[h]ad I known that the corporation was required to appear through counsel, [Defendant] would have retained Missouri counsel."

Turley's affidavit (also part of the post-judgment filings) acknowledged talking with Braha on January 5. She testified:

"During our conversation, I told Mr. Braha that he needed to file an Answer to the Petition. Further, I told him that he would need to get an attorney. Mr. Braha insisted that he did not want to go to the expense of hiring an attorney at that time. He stated that he wanted to file an Answer himself. I advised Mr. Braha that I would file-stamp and place in the Court file anything that he sent. I also told him that I did not know if that would be a legal response on behalf of his company." (Paragraph numbers omitted.)

Braha's January 6 letter was a two-page, single-spaced document directed to

"Judge David Andrew Dolan, c/o Karen Turley." It made reference to the style of the case, the case number, and recited that a copy had been sent to John Grimm ("Grimm"), Plaintiff's attorney. In the body thereof, Braha alleged he had talked with Grimm after he (Braha) had received the summons; that Grimm had then faxed documents to Braha which Grimm claimed supported Plaintiff's claims. Continuing, Braha's letter recited that after looking at the documents received from Grimm, he decided "we are all looking at the same evidence [and] I will resubmit these same documents to support my answers below." The balance of the letter alleged facts supportive of Defendant's claim that it had not breached the contract.

A docket sheet entry on January 7, 2004, recited: "Answer Filed (copy mailed by Defendant to Plaintiff's attorney) Filed by BRACO MANUFACTURING INC."

On February 10, 2004, Grimm filed a "Motion For Default Judgment" against Defendant, alleging that only a lawyer could have answered on Defendant's behalf; that since Braha was not a lawyer, the letter filed by him did not qualify as a responsive pleading or answer; consequently, Defendant was in default. Accompanying the motion was an affidavit by Lucille R. Casell, which stated Plaintiff had damages totaling $68,897.76 because of Defendant's breach of the contract. Neither Defendant nor Braha were notified of these filings nor were they notified in advance of Grimm's court appearance on February 10, 2004. Judgment for $68,897.76 was entered against Defendant on that date.

On March 5, 2005, Defendant moved to set aside the judgment, relying upon Rule 74.05(d) as its basis. Both in its motion and Braha's affidavit, Defendant set out facts that it claimed raised a meritorious defense and supported a "good cause shown" finding. Defendant's motion was denied and this appeal followed.

■ Rule 74.05(d) applies specifically to default judgments and requires that a motion to set aside shall be for "good cause shown" which includes a mistake or conduct not intentionally designed to impede the judicial process. *Billingsley v. Ford Motor Co.*, 939 S.W.2d 493, 497 (Mo.App. 1997). Relief via this rule must be sought "within a reasonable time not to exceed one year after the entry of default judgment." "Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." *Id.*

Defendant's first point relied on maintains, *inter alia*, that the trial court committed reversible error by not setting aside the default judgment because Defendant's motion stated facts that established the good cause element of a Rule 74.05(d) case.[1]

The applicable scope of appellate review is stated in *Keltner v. Lawson*, 931 S.W.2d 477 (Mo.App.1996):

"'The trial court has discretion to set aside a default judgment, and its decision will not be interfered with unless an abuse of discretion is found. *Bell v. Bell*, 849 S.W.2d 194, 197 (Mo.App.1993); *Moore v. Dahlberg*, 810 S.W.2d 730, 732 (Mo.App.1991). The discretion not to set aside a default judgment, however, is a good deal narrower than the discretion to set one aside. *LaRose v. Letterman*, 890 S.W.2d [347] at 350 [Mo.App.1994].

---

1. During oral argument on appeal, Plaintiff conceded Defendant had a meritorious defense and that Defendant's Rule 74.05(d) motion was timely filed. Consequently, the only issue on appeal is whether the trial court erred when it implicitly ruled Defendant had not proven the good cause element.

Thus, appellate courts are more likely to reverse a judgment which fails to set aside a default judgment than one which grants that relief. *Moore v. Dahlberg,* 810 S.W.2d at 732. This is because of the law's distaste for default judgments and its preference for trials on the merits. *See LaRose v. Letterman,* 890 S.W.2d at 350; *Gibson v. Elley,* 778 S.W.2d [851] at 854 [Mo.App.1989].'" *Id.* at 479 (quoting *Myers v. Pitney Bowes, Inc.,* 914 S.W.2d 835, 838 (Mo.App.1996)).

■ In adopting Rule 74.05(d), the Missouri Supreme Court "considerably broadened" the discretion of the trial court to forgive the mishandling of legal documents. *Myers,* 914 S.W.2d at 839[5]. Under the current version of this rule, "[w]here a reasonable doubt exists as to whether the conduct was intentionally designed or irresponsibly calculated to impede the work of courts, it should be resolved in favor of good faith." *Id.* at 839.

This court has noted that although the good cause element of Rule 74.05(d) evades " 'precise definition,' " it " 'obviously intends a remedial purpose and is applied with discretion to prevent a manifest injustice or to avoid a threatened one.' " *In re Marriage of Williams,* 847 S.W.2d 896, 900 (Mo.App.1993) (quoting *B L C(K) v. W W C,* 568 S.W.2d 602, 605 (Mo.App. 1978)).

"Good cause" under Rule 74.05 for failure to timely file an answer was addressed in *Myers:*

" 'The good cause requirement of Rule 74.05(d) is satisfied by proving that the party in default did not recklessly or intentionally impede the judicial process. *Great S. Sav. & Loan Ass'n v. Wilburn,* 887 S.W.2d 581, 584 (Mo.banc 1994); *LaRose v. Letterman,* 890 S.W.2d at 351; *Plybon v. Benton,* 806 S.W.2d 520,

524 (Mo.App. W.D.1991). While the prior version of Rule 74.05 was interpreted to mean that a defendant who negligently failed to file a timely answer should be denied relief, the amended rule clarified that ' "good faith mistakes do constitute good cause, and a default judgment can be vacated *even if the movant has negligently failed to file a timely answer."* ' *Newton v. Manley,* 824 S.W.2d 522, 524 (Mo.App. S.D.1992) (quoting Laughrey, *Judgments—The New Missouri Rule,* J.Mo.Bar 11, 15 (Jan.-Feb. 1988))."

914 S.W.2d at 839[6].

When analyzing the term "reckless" in the Rule 74.05(d) context, this court has looked to the dictionary definition: " '[R]eckless' is 'lacking in caution: deliberately courting danger.' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1896 (1971)." *Williams,* 847 S.W.2d at 900. In *Williams,* we also impliedly recognized the applicability of the RESTATEMENT[2] definition of "reckless" in a Rule 74.05 case:

" 'Recklessness differs from negligence also in kind. A person is negligent, if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency.' RESTATEMENT § 500, Comment g. To be reckless, a person makes a conscious choice of his course of action, 'either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to any reasonable man.' "

*Id.* (quoting *Gibson by Woodall v. Elley,* 778 S.W.2d 851, 854 (Mo.App.1989) and *Farm Bureau Town & Country Ins. Co. v. Turnbo,* 740 S.W.2d 232, 235 (Mo.App. 1987)).

---

2. *See* RESTATEMENT OF TORTS (SECOND), § 500, cmt. g (1965).

Based on the facts of this case, the trial court's implicit conclusion that Defendant failed to show good cause is erroneous. In so deciding, we examine Braha's behavior and conduct.

After Braha received the summons and petition, he did not ignore the directive in the summons, i.e., that Defendant "file [its] pleading to the petition ... within 30 days after receiving the summons." The uncontroverted evidence is that he contacted Turley four days before a responsive pleading was due. His purpose was to get "instructions on answering Plaintiff's Petition." Understandably, Turley was guarded in her response. However, the answers she gave Braha were, in part, couched in terms of what Braha should do, not what Braha should do for the corporation. For example, she told Braha that "*he* needed to file an [a]nswer to the [p]etition[ ]" and that "*he* would need to get an attorney." (Emphasis supplied.) When Braha voiced his intent to file an answer himself, Turley's response was that she would "file-stamp and place in the file anything that [Braha] sent[,]" but cautioned that she "did not know if that would be a legal response on behalf of the company."

Evidence of Turley's comments to Braha may well have supported a finding of negligence, namely, that Braha did not adequately cope with the possibility of the case going into default when, in the face of Turley's remarks, he did not check with a lawyer or otherwise determine if he could file an answer on behalf of Defendant. *See* RESTATEMENT, n. 2 above; *see also Billingsley,* 939 S.W.2d at 499; *Williams,* 847 S.W.2d at 900; *Gibson,* 778 S.W.2d at 854. This court does not agree, however, that such evidence, even when considered in light of Turley's cautionary remark that she "did not know if [Braha's letter] would be a legal response on behalf of the company[,]" supports a finding that Braha deliberately courted danger or consciously chose a course of action "either with knowledge of the serious danger to [Defendant] ... or with knowledge of ... facts which should disclose the danger to any reasonable man." Nothing in Turley's testimony can reasonably be interpreted as importing knowledge to Braha that a corporation can only appear in legal proceedings though an attorney and that filings by him on behalf of Plaintiff might be considered "untimely filed and null and void." *See Reed v. Labor and Indus. Relations Comm'n.,* 789 S.W.2d 19, 23 (Mo.banc 1990); *Stamatiou v. El Greco Studios, Inc.,* 935 S.W.2d 701, 702 (Mo.App.1996). We are led to this view, in part, by what we earlier noted, i.e., Turley first talked with Braha in terms of what Braha should do, not what Braha should do for the corporation. Equally significant is Braha's testimony—not directly controverted by Turley's affidavit or any other evidence—that he did not know nor was he told by Turley that "corporations must appear by attorney." The record is silent on whether Defendant had been in other litigation, and if so, whether Braha had ever been rebuffed or precluded from filing pleadings on behalf of Defendant.

In sum, there are no facts, either generally or peculiar to this case, that should have disclosed to Braha, when measured by the "reasonable man" standard, that a default judgment might occur if he, rather than a lawyer, answered Plaintiff's petition. Under the circumstances, reasonable doubt exists as to whether Braha's filing an answer on behalf of Defendant was intentionally designed or irresponsibly calculated to impede the work of the courts. Consequently, the trial court should have resolved all doubts on this issue in favor of a finding of good faith. *Billingsley,* 939 S.W.2d at 498. We are persuaded Defendant did not impede the judicial process by reason of Braha's behavior and that the

trial court abused its discretion when it did not prevent a manifest injustice by setting aside the default judgment. *See Wilburn,* 887 S.W.2d at 584; *Billingsley,* 939 S.W.2d at 499; *Williams,* 847 S.W.2d at 900.

In so holding, we do not ignore cases cited by Plaintiff to support its argument for affirmance, i.e., *Krugh v. Hannah,* 126 S.W.3d 391 (Mo.banc 2004), and *Snelling v. Roy's Transmission, Inc.,* 144 S.W.3d 919 (Mo.App.2004). However, factual dissimilarities in the cases make them inapposite as support for Plaintiff's position. In *Krugh,* the court reversed a judgment that set aside a default because (a) there was uncontradicted evidence that four default judgments had been taken against the defaulting party or its registered agent in the three-year period before the subject case; (b) the plaintiff's lawyer gratuitously notified the defaulting party's registered agent "on August 10 that [the defendant corporation] was already several weeks in default, [yet] she still waited another 13 days to contact the insurer[;]" and (c) defendant took absolutely no action to defend itself in the thirty-day period before default. 126 S.W.3d at 393. Those are not the facts here. This record has no evidence of previous disregard of the court system by Braha or Defendant; there was no warning of Defendant or Braha by Plaintiff's lawyer; and Defendant did take some action to defend itself, chiefly via the letter/answer filed on its behalf by Braha.

The *Snelling* court also reversed a judgment that set aside a default judgment, but did so because (a) the defaulting party did not verify its Rule 74.05(d) motion nor otherwise support it by affidavit or sworn testimony, and (b) the defaulting party " 'failed to notice' that a responsive pleading was required, thereby admitting that

[the party served] failed to read at least part of the summonses." 144 S.W.3d at 921. The latter conduct was held to be conduct "recklessly designed to impede the judicial process." *Id.* at 921[2]. Again, those are not the facts of this case.

For the reasons explained, we hold that Defendant presented facts sufficient to constitute good cause for its failure to appear and defend as required by Rule 74.05(d).

For the reasons given above, we conclude Defendant's first point has merit.[3] The trial court abused its discretion and erred in not setting aside this default judgment. The trial court's judgment refusing to set aside the default judgment is reversed. The case is remanded and the trial court directed to set aside the default judgment and to fix a reasonable time in which Defendant shall be permitted to file an answer.

GARRISON and BARNEY, JJ., concur.

---

**3.** As Point I is decided favorably to Defendant, we need not and do not address Defendant's second point which made additional contentions as to why Defendant claimed the trial court erred in refusing to set aside the default judgment.