**H.J.I., by Next Friend, J.M.I., and J.M.I., Individually, Respondent,**

v.

**M.E.C., Appellant.**

**No. WD 53571.**

Missouri Court of Appeals, Western District.

Jan. 27, 1998.

---

Sheldon Bernstein, Thayer, Bernstein & Bass, P.C., Kansas City, Katharine S. Shepherd, Liberty, for appellant.

Kevin P. Rotert, Gladstone, for respondent.

Before ULRICH, C.J., P.J., and SPINDEN and SMART, JJ.

ULRICH, Chief Judge, Presiding Judge.

M.E.C. (Mother) appeals the trial court's judgment awarding J.M.I. (Father) child support and sole custody of their minor child, H.J.I. (Child). Mother raises five points of trial court error in this action filed by Father seeking determination of paternity, child custody and limited visitation by Mother. She contends that the trial court erred in (1) ordering Mother to pay one-half of Child's uninsured medical expenses including deductibles and co-insurance where the court did not find that amount stated on Father's Form 14 was unjust and inappropriate; (2) failing to appoint a guardian ad litem to protect the interests of Child; (3) entering a default judgment against Mother because Mother failed to file an answer to Father's Petition where child custody and child support were issues raised by Father; (4) entering default judgment against Mother where she was not provided notice and did not appear at the hearing on Father's petition; and (5) denying Mother's motion to set aside the default judgment and for new trial where Mother established good cause for failing to file an answer and where Mother presented a meritorious defense to the award of child custody and child support. Father asks that the judgment of the trial court be affirmed except for the portion of the judgment ordering Mother to pay one-half of Child's uninsured medical expenses including deductibles and co-insurance. Father, therefore, agrees with Mother that the trial court erred when it awarded child support in an amount greater than that stated on Father's Form 14. For the following reasons, the judgment of the trial court is affirmed in part and reversed in part and the case is remanded.

**FACTS**

J.M.I. (Father) and M.E.C. (Mother) are the undisputed parents of a minor child, H.J.I., (Child), born on October 30, 1992. Father and Mother have never been married to each other. Father filed on June 8, 1995, an original Petition for Determination of Father/Child Relationship, Custody and Visitation and an amount for periodic child support. Count I alleged that Father and Mother were the biological parents of Child and requested that the court declare Father the biological father of Child. Count II alleged that Child's interests were best served by Child's being placed in the joint legal custody of Father and Mother with Father having primary physical custody and Mother having reasonable visitation rights. Count III requested Mother pay a reasonable sum of child support to Father and a portion of Father's attorney's fees.

Mother filed an Entry of Appearance on June 30, 1995, acknowledging receipt of Father's Petition, waiving the issuance and service of summons, voluntarily entering her appearance and consenting to trial. Mother did not file an answer to the Petition. She was not notified of the trial setting and did not appear at the trial. Father appeared individually by counsel and as Child's next friend. After Father presented evidence, the trial court entered default judgment against Mother because Mother failed to file an answer. Mother alleges she agreed to waive the issuance and service of summons and consent to trial because Father told her if she did so that he would not bring any further court action. Father denied making this statement.

At trial, Father testified that he was the natural father of Child and that both he and Mother acknowledged his paternity. Father

testified that Child had resided with him four days each week and with Mother two days and one night per week until August 9, 1996. On the night of August 9, 1996, Mother took Child from Father's residence and did not return him to Father. Mother moved to Independence with her boyfriend, Jimmie D. Wilcox. Mother did not inform Father of her new address While Mother gave Father her new telephone number, she had a block placed on her phone so that Father could not call her. Father attempted to call Mother at her residence on several occasions but never attempted to reach her at her place of employment. Mother did not let Father or anyone else visit Child.

Father's Form 14 estimated Mother's monthly income at $2,028.00. In determining Mother's gross monthly income, Father relied on Mother's statement to him that she made almost $18.00 an hour with tips and worked thirty-two hours a week. This income figure established Mother's presumptive child support obligation at $375.00 per month.

Father requested Mother have supervised visitation with Child due to Mother's relationship with Mr. Wilcox to whom Mother is now married. Father; Mother's friend, Lynn Finder; Mother's mother, Mrs. Leah Brand; and Mother's step-father, Mr. Kenneth Brand, all testified that Mr. Wilcox had struck and beat Mother and that some of those beatings occurred while Child was with Mother. Father also testified that Mr. Wilcox used narcotics. Father asked that Mother receive supervised visitation because of the physical abuse and claimed drug use occurring at Mother's residence. Mr. Brand and Mrs. Brand both testified that Child's best interests necessitating Child's residing with Father and for Mother to have supervised visitation. Mr. and Mrs. Brand both stated they were willing to supervise visitation between Child and Mother.

As an additional grounds for supervised visitation with Child, Father testified Mother has a drinking problem. Ms. Finder, who has been Mother's friend for twelve years, testified that Mother has had a drinking problem since she became twenty-one years of age. Ms. Finder testified that nine out of ten times when Mother drinks, she passes out. Mother received convictions for Driving Under the Influence (DUI) in 1992, 1993 and 1996. The third DUI conviction in 1996 resulted from Mother driving her car into a parked car on the side of a highway. Child was in the vehicle and was not wearing a restraining device. After hitting the parked car, Mother left the scene of the accident and drove to Father's house, followed by an off-duty police officer who saw the accident. After Mother awoke Father, Father went outside and found Child crying and bleeding. An ambulance arrived and took Child and Father to the hospital where Child was treated for a broken leg and four staples were placed in Child's head to treat a wound. Mother was arrested and later convicted of DUI and child endangerment. Father and Ms. Finder testified that Mother continued drinking after the accident.

At the conclusion of the testimony, the court declared Father to be the natural father of Child, awarded sole legal and physical custody to Father subject to supervised visitation by Mother and ordered Mother to pay one-half of Father's attorney's fees, $750.00. The court ordered Mother to pay $375.00 per month in child support pursuant to the Form 14 submitted by Father. Father was ordered to maintain health insurance covering Child. The court also ordered that Mother and Father were each responsible for one-half of Child's uninsured medical-type expenses plus deductibles and co-insurance payments. Thereafter, Father went to Mother's residence and took Child away to live with him.

Mother retained counsel and on September 24, 1996, filed a Request for Rehearing, a Motion to Set Aside Judgment and for New Trial and Suggestions in Support Thereof. Mother filed an Amended Motion to Set Aside Judgment and for New Trial and Amended Suggestions in Support Thereof on September 29, 1996.

A hearing was held on October 28, 1996, to receive evidence and decide Mother's Amended Motion to Set Aside Judgment and for New trial. Mother called Father as an adverse witness. Father testified that Mother received a copy of the Petition but did not

receive notification that changes were made to the document. Father testified that he and Mother had previously agreed to have joint legal custody of Child. Father testified that he did not tell Mother he intended to seek supervised visitation because Mother had left her known residence and he was unable to contact her. Father testified that he did not tell Mother of the September 9, 1996, hearing because he was unable to contact her.

Mother testified at the hearing that Mother and Father had agreed to share custody of Child and that no child support be paid. Mother testified that Father restricted her visitation rights and required that her visits with Child be supervised after the March 1996 accident but eventually allowed her visitation rights to return to normal. Mother admitted being intoxicated when the March 1996 accident occurred and admitted being intoxicated in Child's presence on other occasions. Mother testified that she lost her driving privileges for one year following the March 1996 accident but continued to drive her car even when Child was with her. Mother admitted taking Child from Father on August 9, 1996, but stated she did so because Father had threatened to take Child from Mother if Mother moved away from their residence. Mother admitted she did not give her address to Father or to any other family members or friends and had a phone block put on her phone so Father could not contact her. Mother, however, noted that Father never attempted to contact her at her place of employment.

Mother asserted during the hearing on the motion that Father's figures that Mother made almost $18.00 per hour with tips and worked thirty-two hours per week were inflated. She testified that she makes only $5.40 per hour plus tips of approximately $6.00 to $8.00 per hour. Additionally, Mother's 1995 tax return showed a total income of $17,114.00 of which $1,925.00 was unemployment compensation. Father countered by asserting that Mother only began working at her current job at the end of 1995 and, thus, her 1995 tax return does not fairly represent her current monthly income. Father stated in his Form 14 that he paid $25.00/month in health insurance for Child. Father also submitted that he paid $60.00/week in daycare costs. Mother alleges that she also incurred child care expenses in 1995 although she did not state the amount of child care expenses she paid.

At the conclusion of the testimony, the court took the matter under advisement and requested that both parties prepare trial briefs which were subsequently submitted by the parties. The statutory period, however, ran under section 510.360, and, thus, the motion for a new trial was deemed denied. This appeal followed.

## I. THE TRIAL COURT ERRED IN ORDERING MOTHER TO PAY ONE–HALF OF CHILD'S UNINSURED MEDICAL EXPENSES

As her first point on appeal, Mother alleges the trial court erred in ordering Mother to pay one-half of Child's uninsured medical expenses because it resulted in Mother's paying child support in excess of the amount Father requested on his Form 14. Mother specifically argues that an award of child support in excess of the presumptive amount determined by Father's Form 14 could not be made without the trial court finding that the amount was unjust and inappropriate. Father also urges that the trial court's award of one-half of Child's uninsured medical expenses was error.

Rule 88.01 of the Missouri Rules of Civil Procedure provides that "[t]here is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial or administration proceeding for ... child support." RULE 88.01. A provision calling for payment of uninsured medical expenses constitutes payment of child support. *Adelman v. Adelman*, 878 S.W.2d 871, 873 (Mo.App. 1994). The Form 14 amount may be altered by the trial court if it makes "a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate." RULE 88.01.

The Form 14 submitted by Father, and accepted by the trial court, established Mother's presumptive child support obligation at $375.00 per month. Having accepted the Form 14, the court was compelled to order the presumed amount of child support unless the court determined that the presumed correct child support amount was unjust and inappropriate after considering all relevant factors. *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996). The court did not find the presumed correct child support amount to be unjust and inappropriate. Father did not request that Mother pay any of Child's uninsured medical expenses on the Form 14. Nevertheless, the trial court ordered Mother to pay one-half of Child's uninsured medical expenses in addition to the $375.00 child support award calculated utilizing the Form 14. In awarding this additional sum to Father, the trial court failed to make a specific finding pursuant to Rule 88.01 that the amount calculated utilizing the Form 14 was "unjust or inappropriate." "The requirement for a written or specific finding on the record that the Form 14 amount, after considering all relevant factors, is unjust or inappropriate is mandatory." *Wilson v. Sullivan,* 922 S.W.2d 835, 838 (Mo.App.1996). The trial court, therefore, erred in awarding child support to Father in excess of the amount stated in the Form 14. *Id.; Adelman,* 878 S.W.2d at 873. The trial court's award of child support is reversed and the case is remanded for the court to reconsider the award of child support in light of the requirements imposed by law. Point one is granted.

## II. THE TRIAL COURT DID NOT ERR BY FAILING TO APPOINT A GUARDIAN AD LITEM

As her second point on appeal, Mother argues the trial court erred in not appointing a guardian ad litem pursuant to section 452.423, RSMo 1997. Section 453.423 provides:

In all proceedings for child custody ... where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.

§ 452.423.1 RSMo. "Child abuse" is defined as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for his care, custody, and control except that discipline includes spanking, administered in a reasonable manner shall not be construed to be abuse." § 210.110.1, RSMo 1994. The definition for "neglect" is "failure to provide by those responsible for the care, custody and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical or any other care necessary for his well-being." § 210.110.5, RSMo 1994; *Frazier v. Frazier,* 845 S.W.2d 130, 131 (Mo.App.1993). The statutory mandate to appoint a guardian ad litem is triggered only by allegation of child abuse expressly stated in a pleading and not by mere introduction of evidence of abuse at trial. *Rombach v. Rombach,* 867 S.W.2d 500, 503 (Mo.1993); *accord Chapman v. Chapman,* 871 S.W.2d 123, 125 (Mo.App.1994). Where evidence of child abuse or neglect is introduced at trial, however, the court may require that the pleadings be amended to conform to the evidence and then appoint a guardian ad litem. *Rombach,* 867 S.W.2d at 504. The appointment of a guardian ad litem, in a situation where the pleadings are amended to allege child abuse or neglect, is consistent with the statutory mandate in section 452.423. *Id.*

Here, Father's Petition alleged neither child abuse nor child neglect by Mother. Father did not request to amend the Petition to allege either child abuse or neglect. The issue, therefore, is whether the evidence presented at the hearing established child abuse or neglect by Mother that would require the court to sua sponte order the pleadings to conform to the evidence and appoint a guardian ad litem. *Id.*

Analysis of the evidence reveals that no child abuse nor neglect by Mother was established. Admittedly, Mother drinks excessively at times and has been convicted of three DUIs. One DUI conviction, however, involved Child. Although that incident resulted in Child's being injured and Mother

being convicted of child endangerment, the incident occurred over one year ago and neither Father nor Mother allege that Mother has since driven with Child in the car while intoxicated. *See In re Marriage of Bertz,* 856 S.W.2d 932, 935 (Mo.App.1993) (holding that appointment of guardian ad litem was unnecessary although father drove his vehicle with children as passengers after consuming alcohol). Although Mother has driven with Child in her car since losing her driving privileges, a significant violation of the motor vehicle code, no evidence was presented to show her driving then endangered Child. Mother's drinking, therefore, did not establish abuse or neglect under section 452.423.

Mother's relationship with Mr. Wilcox is also insufficient to establish child abuse or neglect. Although Child was exposed to an abusive environment while living with Mr. Wilcox and Mother and has seen Mr. Wilcox strike Mother, at all times Mr. Wilcox's anger was directed at Mother. *See Gilman v. Gilman,* 851 S.W.2d 15, 18 (Mo.App.1993) (finding appointment of guardian ad litem unnecessary where father struck mother because father's anger was directed at mother rather than at his daughter). This abusive environment is a factor when considering many issues, but no evidence was presented to show Mr. Wilcox had ever struck or threatened to strike Child. While Mother's conduct affects her fitness to have custody and visitation of Child, it is neither child abuse nor child neglect. The trial court, therefore, did not err in not appointing a guardian ad litem. Point two is denied.

### III. THE TRIAL COURT DID NOT ERR BY ENTERING DEFAULT JUDGMENT ALTHOUGH CHILD CUSTODY AND CHILD SUPPORT WERE AT ISSUE

As her third point on appeal, Mother alleges the trial court erred in entering default judgment because child custody and child support were at issue. Mother argues that the trial court did not hear sufficient evidence to determine what award was in Child's best interests and that because Father's Petition requested joint custody, the court erred in awarding sole custody to Father.

Section 452.375, RSMo 1994, provides the relevant standard for a court to determine child custody. Section 452.375.2 provides in relevant part:

The court shall determine custody in accordance with the best interests of the child.

The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of the child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interests of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation shall be ordered in a manner that best protects the child and the parent or other family or household members who is the victim of domestic violence from further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

§ 452.375.2, RSMo 1994. The trial court determines what is the best interest of the child in a child custody dispute, and the court of appeals determine whether the record contains sufficient evidence to support the trial court's assessment. *Riley v. Riley,* 904

S.W.2d 272, 275 (Mo.App.1995). When determining the sufficiency of the evidence to support a decree in a child custody proceeding, appellate courts accept as true evidence and inferences from evidence that are favorable to the trial court's judgment and disregard all contrary evidence. *Burkhart v. Burkhart*, 876 S.W.2d 675, 678 (Mo.App. 1994). The judgment of the trial court will be sustained by the appellate court unless there is not substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A judgment will not be reversed unless the appellate court is left with a firm belief that the decree or judgment of the trial court was wrong. *Id.*

■ Substantial evidence supported the trial court's determination that Child's best interests would be served by Father having sole physical custody. Viewing the evidence in the light most favorable to the trial court's child custody award, the evidence established that Mother had a substance abuse problem, Mother endangered Child by driving while intoxicated, Mother injured Child by being involved in a car accident while intoxicated, Mother's relationship with Mr. Wilcox exposed Child to domestic violence and to the use of illegal narcotics, and Mother denied Father access to Child. *See Rinehart v. Rinehart*, 877 S.W.2d 205 (Mo.App.1994) (holding that parent's history of denying other parent meaningful contact with child may be considered in determining child's physical placement); *Harris v. Harris*, 803 S.W.2d 167 (Mo.App.1991) (same). The evidence also established that Father was a caring parent capable of providing Child with a stable environment, Child and Father had a good relationship and that Father was willing to allow Mother visitation with Child. All the evidence presented, therefore, supported the trial court's finding that awarding Father custody of Child was in the Child's best interests.

■ Mother, however, alleges that the trial court's grant of sole custody to Father was improper because Father requested only joint custody in his Petition. The rule which states that court will not grant default judgment relief greater than or different from that requested in petition applies with equal force to child custody petition as to money judgments. *Pierce v. Pierce*, 737 S.W.2d 508 (Mo.App.1987). In *Pierce*, the father requested a change of visitation and child support in his petition. *Id.* at 508. The mother did not file an answer and was declared in default. *Id.* The mother also failed to appear for the hearing. *Id.* After hearing the evidence, the trial court granted the father primary custody and denied the mother visitation. *Id.* at 509. The transcript of the hearing was not before the court on appeal. *Id.* The appellate court reversed the grant of custody to the father, finding that without the aid of the transcript of the hearing, the court could not be assured that the trial court heard all the relevant information before reaching its decision. *Id.* The court reasoned that until all relevant evidence was presented to the trial court, the entry of judgment in excess of the relief requested in the petition was error. *Id.* The court distinguished domestic relations cases where courts had granted relief in excess of the prayer by noting that in each of those cases both parties were present and aware of what was at stake and the trial court heard both sides. *Id.* (citing *Stuart v. Stuart*, 637 S.W.2d 371 (Mo.App.1982); *Gianformaggio v. Gianformaggio*, 341 S.W.2d 293 (Mo.App. 1960)).

■ Here, in contrast to *Pierce*, the transcripts of both the hearing in which custody was awarded to Father and the hearing in which the court considered Mother's motion to set aside the default judgment and for a new trial are in the record on appeal. The transcripts reveal that, in contrast to *Pierce*, the trial court heard all the relevant evidence before making its custody determination. The evidence at the first hearing established that Mother drove while intoxicated, injuring Child on one occasion, Mother's relationship with Mr. Wilcox exposed Child to domestic violence and to the use of illegal narcotics, Mother denied Father access to Child, and that Father had a good relationship with Child and could provide him a stable environment. The evidence presented by Mother at

the second hearing added nothing to the evidence already presented to the court. Mother was presented with the opportunity at the hearing on her motion to rebut the evidence presented at the trial and to call any witnesses who testified at the trial or who could have testified. The only witnesses Mother called at the hearing to set aside the default judgment were Father and Mother. Father's testimony mirrored his prior testimony except that he testified that he did not give Mother notice of the hearing. Mother's lack of notice of the trial setting when Mother waived service and had not filed an answer, however, does not support an award of joint custody because Mother failed to adduce any evidence that Child's interests would be best served by Mother and Father sharing custody. Mother's testimony concurred with the facts Father testified to at trial except that she testified that she and Mr. Wilcox are now married. Mother's marriage to Mr. Wilcox, however, weighs against a grant of joint custody as the evidence supports the conclusion that Mr. Wilcox physically abuses Mother and may use illegal drugs in front of Child, an environment not in Child's best interests. Furthermore, in contrast to *Pierce*, because Mother had an opportunity to present evidence at the second hearing and to rebut any evidence presented at the first hearing, she cannot show that she was prejudiced by her lack of notice to the initial hearing when she had waived service and had not filed an answer. The evidence presented at both hearings, therefore, established that Child's interests were best served by Father having sole custody of Child. Having determined that awarding Father sole custody was in Child's best interest, the trial court was empowered pursuant to section 452.375 to grant Father sole custody even though Father did not request sole custody in the petition. Point three is denied.

## IV. THE TRIAL COURT DID NOT ERR IN ENTERING DEFAULT JUDGMENT ALTHOUGH MOTHER DID NOT RECEIVE NOTICE OF THE HEARING

■ As her fourth point on appeal, Mother alleges the trial court erred in entering default judgment because she was not provided notice of the hearing on Father's Petition. Rule 53.01 provides that a civil action is commenced by filing a petition with the court. RULE 53.01. Once a petition has been filed with the court the defendant is required to file an answer within thirty days after the service of the summons and the petition. RULE 55.25. If the defendant fails to file an answer within the requisite thirty day period, the defendant is deemed in default and judgment may be entered against the defaulting party. RULE 74.05(c). Where a party is served with a petition by summons, notice of the time and place of the hearing for the entry of judgment is mandatory. § 506.130, RSMo 1994. Where a party waives service of summons, however, there is no statutory requirement that notice of the hearing be given. § 506.130, RSMo.

■ Father filed a Petition with the court regarding the custody and support of Child. Mother received a copy of this Petition although she waived the issuance of summons through her Entry of Appearance. Over one year passed without Mother filing an answer to Father's Petition. Because Mother failed to file an answer within thirty days, the court declared Mother in default pursuant to Rule 74.05. Once Mother was declared in default, the court held the requisite hearing to determine the issues alleged in Father's Petition. As Mother acknowledges, because she waived the service of summons, there was no statutory requirement that she receive notice of the hearing.

Contrary to Mother's contention, the lack of notice requirement does not leave Mother without procedural protection. Under Rule 74.05(d), Mother was allowed to move, and did move, to set aside the default judgment, and the court, when ruling on the motion to set aside, considered Mother's lack of notice when it assessed whether good cause for not appearing had been established. RULE 74.05(d). Although Mother urges this court to impose notice requirements on a plaintiff where the defendant agrees to voluntarily enter appearance, the imposition of such requirement would require adoption of a Supreme Court Rule or legislation, each of which is outside the authority of this court.

The trial court, therefore, did not err in entering default judgment against Mother despite her not having received notice of the hearing. Point four is denied.

## V. MOTHER IS ENTITLED TO A NEW TRIAL ON THE ISSUE OF CHILD SUPPORT ONLY

As her final point on appeal, Mother alleges the trial court erred in denying her motion to set aside the default judgment and for new trial. Mother argues that because she had a meritorious defense to the judgment awarding Father sole custody of Child and awarding Father child support and because she established good cause for failing to file an answer, the trial court erred in refusing to set aside the default judgment and grant her a new trial.

 Rule 74.05(d) provides when a default judgment will be set aside. The rule states in relevant part:

> Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.

RULE 74.05. Rule 74.05(d), therefore, requires assertion of sufficient facts to constitute both a meritorious defense and good cause shown. Appellate courts interfere with the trial court's grant of a default judgment only if an abuse of discretion resulted. *Brants v. Foster*, 926 S.W.2d 534, 535 (Mo. App.1996). The discretion not to set aside a default judgement is narrower than the discretion to set aside. *In re Marriage of Williams*, 847 S.W.2d 896, 900 (Mo.App. 1993). This is because of the distaste our system has for default judgments, a distaste that is especially strong in cases involving child custody. *Id.*

 Whether Mother established good cause as required by Rule 74.05(d) must be determined in deciding whether the trial court abused its discretion in denying Moth-

er's motion to set aside the default judgment. "Good cause shown" is an excuse for nonappearance. *Brants*, 926 S.W.2d at 535. The good cause element of Rule 74.05(c) eludes precise definition but is intended to serve a remedial purpose and is applied with discretion to prevent a manifest injustice or to avoid a threatened one. *Williams*, 847 S.W.2d at 900. Good cause may be found where a trial court, confronted with "the solemn duty to decide the custody of a child" is "beset by doubt as to the true evidence ..." *Id.* (citing *BLC(K) v. WWC*, 568 S.W.2d 602, 605 (Mo.App.1978)). Good cause includes "a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." *Id.* (quoting *Great Southern Sav. & Loan Ass'n v. Wilburn*, 887 S.W.2d 581, 583 (Mo. banc 1994)). A defaulting defendant shows good cause by proving that he did not recklessly or intentionally impede the judicial process. *Id.*

 Mother has presented sufficient facts to establish good cause for failing to timely appear. While Mother did not file an answer to Father's Petition, she did file an appearance. Additionally, Mother did not file an answer because she did not disagree with Father's request for joint custody. A hearing was not set on Father's Petition for over fourteen months. The parties agree that Mother never received notice that a hearing had been set. Although Mother's mother and step-father testified at the hearing, the parties agree that Mother was not in contact with her family during this time period and, thus, could not have received notice from them. While Father alleges he could not reach Mother because he did not have her home address, Father never attempted to contact Mother at her place of employment which was known to him. Moreover, Father's allegation that he was unaware of Mother's place of residence is undermined by the fact that when the court granted Father custody of Child, Father knew where Mother resided and went to her residence to take Child. Another fact support of Mother's effort to show good cause is that immediately upon learning of the default judgment entered against her, Mother retained counsel and filed a motion to aside the default judg-

ment. These facts suffice to satisfy the good cause requirement of Rule 74.05(d).

Second, whether Mother has established a meritorious defense as required by Rule 74.05(d) must be determined. In order to establish a meritorious defense, the movant must present an arguable theory that would defeat the force of the plaintiff's claim although the defense need not be conclusively proven. *Id.* at 536. In determining whether the pleadings satisfy the requirements, appellate review includes examining the allegations in the motion and any affidavits, exhibits and proposed answers. *Id.* Although the trial court's decision is more likely to be interfered with when the motion to set aside the judgment has been denied that when it has been granted, granting the motion where a meritorious defense has not been stated is an abuse of discretion. *Id.*

Mother alleges a meritorious defense is established to the award of sole custody to Father because Mother did not receive notice of the hearing; Mother did not know Father was seeking sole custody of Child; Mother did not know her access to Child would be restricted; and Mother had been Child's caretaker in the past. These facts, however, are insufficient to establish a meritorious defense to the award of sole custody to Father. Primarily, Mother's lack of notice of the hearing, Mother's lack of knowledge that Father was seeking sole custody and her lack of knowledge that her access to Child would be restricted do not support an award of joint custody because these facts do not show why the Child's best interests would be served for Child to be placed in joint legal and/or physical custody of the parents. Additionally, while Mother had been Child's caretaker in the past, that Mother and Father had previously shared in the care of Child is undisputed and was known to the court when it determined Child's interests would be best served by Father having sole custody. Moreover, Mother failed to adduce any evidence at the hearing on her motion to rebut Father's evidence that Mother drinks excessively, has driven while intoxicated and injured Child while driving while intoxicated, exposed Child to both domestic violence and the use of illegal drugs and has denied Father access to Child. Mother acknowledges that Father is a good parent capable of providing a stable environment for Child. Because Mother failed to allege facts that could defeat the force of Father's claim for sole custody, Mother failed to establish a meritorious defense to the court's award of child custody as required by Rule 74.05(d). The trial court, therefore, did not err in denying Mother's motion to set aside the default judgment and for a new trial on the child custody issue.

Mother, however, did establish a meritorious defense to the trial court's award of child support. In making the child support award, the trial court relied on Father's allegation that Mother made just less than $18.00/hour with tips and worked thirty-two hours a week. While Father claimed Mother provided him with this information, Mother denies making this statement and denies making $18.00/hour. Instead, Mother alleged that her salary was only $5.40 an hour plus tips of approximately $6.00 to $8.00 an hour. Mother's allegation that she makes $11.40–$13.40 an hour rather than $18.00 an hour presents an arguable defense to Father's request for child support because the allegation, if proven, could result in the reduction of Mother's child support obligation. Awarding a sum for child support on the amount of income represented by Father if Mother makes substantially less would be unfairly burdensome on Mother. Mother, therefore, presented a meritorious defense to the child support award and was entitled to a new trial to determine a proper amount of child support.

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.

All concur.