**FIRST COMMUNITY BANK, Plaintiff–Respondent,**

v.

**HUBBELL POWER SYSTEMS, INC., Defendant–Appellant.**

**No. SD 29590.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 25, 2009.

Rehearing Denied Oct. 20, 2009.

Application for Transfer Denied Dec. 22, 2009.

---

Scott T. Jansen, Jefferson City, MO, for Appellant.

John F. Scott, Poplar Bluff, MO, for Respondent.

DON E. BURRELL, Judge.

Hubbell Power Systems, Inc. ("Hubbell") appeals an order denying its motion to set aside a default judgment brought pursuant to Rule 74.05(d).[1] Hubbell asserts the trial court erred in denying its motion because: 1) the trial court lacked "jurisdiction" to enter the underlying judgment because Butler County was not a proper venue for the plaintiff's claim; and 2) its motion satisfied all of the requirements of Rule 74.05(d). Because improper venue is not a jurisdictional defect and Hubbell failed to show good cause to set the default judgment aside, we affirm the trial court's order.

## I. Background

First Community Bank ("Bank") procured the default judgment against Hubbell. The following factual averments were set forth in Bank's verified petition and its attached exhibits.

Hubbell was a customer of Southern Machine and Tool Company, Inc. ("SMT"). SMT had opened a $500,000 line of credit with Bank by means of a promissory note and security agreement. SMT subsequently filed for Chapter 11 Bankruptcy protection. Upon receiving an order from the bankruptcy court granting relief from the automatic stay and authorizing Bank to enforce its security agreement as to "[a]ll accounts receivable due and owing to [SMT] from [Hubbell], Bank filed its suit against Hubbell to collect a $39,000 debt Hubbell owed to SMT."[2]

Hubbell was served with a copy of Bank's petition via its registered agent in Cole County on February 20, 2008. Hubbell did not timely file any response to Bank's Petition or otherwise defend the suit, and on March 24, 2008, the trial court entered a default judgment in favor of Bank and against Hubbell in the requested amount of $39,000.

Hubbell filed its motion to set aside the default judgment nine days later, on April 2, 2008. That motion asserted that Mr. John Mulvihill ("Mulvihill"), Assistant General Counsel for Hubbell's parent corporation, Hubbell, Inc., was the person responsible for "hiring outside counsel for [Hubbell] in matters such as this one" but that he had failed to do so in this particular case because of some health issues and the press of other business.

The allegations in Hubbell's motion were supported by Mulvihill's sworn affidavit. Mulvihill stated in his affidavit that he had contacted John Quinn ("Quinn"), a partner at Armstrong–Teasdale, upon being notified that the petition had been filed but did not formally engage that firm to defend the lawsuit in hopes that he "might contact [Bank] and attempt to resolve the matter informally." Neither Mulvihill nor anyone acting on his behalf actually contacted Bank to make any such attempt.

On two separate occasions before an answer to the petition was due, Quinn took it upon himself to attempt to contact Mulvihill by telephone and by e-mail to see if his firm should move forward with defending the lawsuit. Mulvihill's affidavit does not address whether he received these communications or not; it simply says that he did not return Quinn's e-mails or telephone

---

1. Unless otherwise indicated, all rule references are to Missouri Court Rules (2009).

2. Bank alleged it had previously sent a notice to Hubbell that all payments owed to SMT were to be made payable to Bank. Hubbell allegedly wrote out the $39,000 check, took it to Poplar Bluff (Bank's principle place of business), but then refused to remit the check to either Bank or SMT.

messages and "was deeply involved in negotiations over a 3.5 million dollar acquisition." Mulvihill also averred that he "was seeking medical treatment for an attack of the shingles" on March 19 and 20, 2008.

According to Mulvihill, the $3.5 million acquisition closed late on March 20, 2008. The next day, March 21, 2008—the day a responsive pleading was due in the underlying case—Mulvihill's affidavit states that it was Good Friday and he was "only in the office for a short time before leaving for church." On March 25, 2008, Quinn learned that Bank had taken a default judgment against Hubbell and forwarded that information to Mulvihill by e-mail and telephone message. At that time, Mulvihill had been preparing for depositions in another litigation matter and "was out of the state" until Monday, March 31, 2008. Upon returning to the office, Mulvihill learned of the default judgment and contacted Quinn to engage his firm to represent Hubbell in the matter.

Hubbell's motion to set aside the default judgment was accompanied by a motion to transfer venue to Cole County, asserting venue for the underlying case was improper in Butler County. Bank responded by filing objections to Hubbell's motions along with an alternative motion of its own seeking leave to file a First Amended Petition Adding Parties.[3] After hearing argument on the motions, the trial court took them under advisement and subsequently entered an order denying Hubbell's motion to set aside the default judgment and denying as moot Hubbell's motion to transfer venue. Hubbell now appeals that order.[4]

## II. Standard of Review

Although our decisions often state that a trial court has broader discretion to grant a motion to set aside a default judgment than to deny it because of "the distaste our system holds for default judgments," *see, e.g., Klaus v. Shelby,* 42 S.W.3d 829, 831 (Mo.App. E.D.2001), *quoting Gibson by Woodall v. Elley,* 778 S.W.2d 851, 854 (Mo.App. W.D.1989), ultimately, the decision is left to the sound discretion of the trial court and should be overturned only if that discretion is abused. *Brungard v. Risky's, Inc.,* 240 S.W.3d 685, 687–88 (Mo. banc 2007).

■ "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Anglim v. Missouri Pacific Railroad Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992).

## III. Analysis

*Point I: Venue*

■ Hubbell argues that the trial court erred in denying its motion to set aside the default judgment because Butler County was an improper venue for the underlying suit and thereby deprived the trial court of "jurisdiction" over the case.

---

**3.** The parties sought to be added were individual defendants who resided in Butler County. Hubbell assumes Bank sought to add them in an attempt to make venue appropriate in Butler County.

**4.** "A default judgment cannot, itself, be appealed." *Hagan v. Buchanan,* 215 S.W.3d

252, 255 (Mo.App. W.D.2007). A motion to set aside a default judgment brought pursuant to Rule 74.05(d) "is treated as an independent action, and the decision to grant or deny the motion is an independent judgment." *Id.;* Rule 74.05(d).

Trial court jurisdiction is governed by article V of the Missouri Constitution and cannot be altered by statute. *J.C.W. ex. rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253–55 (Mo. banc 2009). "Venue in Missouri [on the other hand] is determined solely by statute." *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 196 (Mo. banc 1991).

"Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal. Such courts may issue and determine original remedial writs and shall sit at times and places within the circuit as determined by the circuit court.'" *Wyciskalla*, 275 S.W.3d at 253–54 (emphasis in original). The underlying lawsuit was a civil case, and Hubbell, a Missouri corporation, was personally served via its registered agent. Thus, the trial court had the necessary subject matter and personal jurisdiction to hear the case.

██ Assuming, *arguendo*, that venue for the case was improper in Butler County, this defect would not have deprived the trial court of its jurisdiction. "Venue assumes the existence of jurisdiction and determines, among many courts with jurisdiction, the appropriate forum for the trial. *Wyciskalla* [275 S.W.3d] at 252. Because it involves a procedural rather than a jurisdictional question, venue is a matter that goes to process rather than substantive rights." *State ex rel. Kansas City Southern Ry. Co. v. Nixon*, 282 S.W.3d 363, 365 (Mo. banc 2009) (citing 77 AM.JUR. 2D *Venue* § 2 (2008)).

One other matter requires our attention. Hubbell points out in its brief that Rule 51.045 provides that a motion to transfer venue is timely brought if it is "filed within sixty days of service on the party seeking transfer." Rule 51.045(a). Here, Hubbell's motion to transfer venue was brought with, and incorporated into, its motion to set aside the default judgment and filed on the thirty-ninth day after Hubbell was served. The difficulty with this argument is that improper venue is an allegation of error that relates to the *underlying case*—not the independent equitable action brought to set aside the default judgment pursuant to Rule 74.05(d). As earlier indicated, a default judgment cannot be appealed. *Hagan v. Buchanan*, 215 S.W.3d 252, 255 (Mo.App. W.D.2007). Because the decision to grant or deny that motion is itself an independent judgment, the trial court was correct in ruling that allegations of error relating to that underlying judgment are moot unless the default is set aside. Rule 74.05(d) specifically sets forth the matters to be considered in ruling on a motion to set aside a default judgment, and improper venue is not among them. Point I is denied.

*Point II: Compliance with Rule 74.05(d)*

██ The setting aside of a default judgment is governed by Rule 74.05(d) which says:

Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside.

The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment.

"Good cause" includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.

An order setting aside an interlocutory order of default or a default judgment may be conditioned on such terms as are just, including a requirement that the party in default pay reasonable attorney's fees and expenses incurred as a

result of the default by the party who requested the default.

A motion filed under this Rule 74.05(d), even if filed within 30 days after judgment, is an independent action and not an authorized after-trial motion subject to Rule 78.04 or Rule 78.06.

As earlier indicated, our review of this matter is for an abuse of discretion. In the context of a motion brought under Rule 74.05, "[a]n examination of whether or not the trial court abused its discretion is based upon whether: (1) facts constituting a meritorious defense were shown; and (2) whether good cause was shown [ ... ], ever mindful of the fact that the rule uses the word 'may' and that word brings the concepts of judicial discretion and its abuse into play." *Gibson by Woodall*, 778 S.W.2d at n.2.[5] "Unless and until both of these determinations are resolved affirmatively, the underlying default judgment remains undisturbed." *In re Marriage of Coonts*, 190 S.W.3d 590, 601 (Mo. App. S.D.2006). All of the necessary elements must be established, as "the law defends with equal vigor the integrity of the legal process and procedural rules and, thus, does not sanction the disregard thereof." *Sprung v. Negwer Materials, Inc.*, 775 S.W.2d 97, 100 (Mo. banc 1989).

■■■ "The good cause requirement of Rule 74.05(d) is satisfied by proving that the party in default did not recklessly or intentionally impede the judicial process." *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835, 839 (Mo.App. S.D.1996). "In close cases, deference must be given to the de-termination of the trial judge as to whether conduct in a particular case is excusable as not being reckless or intentional." *Bell v. Bell*, 849 S.W.2d 194, 198 (Mo.App. W.D. 1993).

While the prior version of Rule 74.05 was interpreted to mean that a defendant who negligently failed to file a timely answer should be denied relief, the amended rule clarifies that "good faith mistakes do constitute good cause, and a default judgment can now be vacated even if the movant has negligently failed to file a timely answer." *Newton v. Manley*, 824 S.W.2d 522, 524 (Mo. App. S.D.1992).

*Myers*, 914 S.W.2d at 839. "One acts recklessly if he or she does so 'with indifference to consequences.' " *Great Southern Savings & Loan Ass'n v. Wilburn*, 887 S.W.2d 581, 585 (Mo. banc 1994) (quoting Black's Law Dictionary 1270 (6th ed.1990)). In the context of default judgments, "reckless" "means 'lacking in caution' or 'deliberately courting danger.' " *Great Southern Savings & Loan*, 887 S.W.2d at 585 (Covington, C.J., dissenting) (quoting *In re Marriage of Williams*, 847 S.W.2d 896, 900 (Mo.App. S.D.1993)).

Recklessness differs from negligence also in kind. A person is negligent, if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency. Restatement [ (Second) of Torts (1965) ], section 500, Comment g. To be reckless, a person makes a conscious

---

5. Notably, Rule 74.05 "makes no reference to the 'no substantial injury to plaintiff' language found in *Whitledge v. Anderson Air Activities*, [276 S.W.2d 114 (Mo. banc 1955) ], thus eliminating the need for such a showing as a condition precedent to the trial court's timely setting aside of a default judgment." *Gibson by Woodall*, 778 S.W.2d at n.2. The rule also requires that such a motion be filed in a timely manner. Here—though Respondent's brief contains an ineffectual attempt to dispute the matter—Hubbell's motion, being brought nine days after the default judgment was entered, was timely filed. *See Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835 (Mo.App. S.D.1996); *Newton v. Manley*, 824 S.W.2d 522 (Mo.App. S.D.1992) (cases approving periods much longer than nine days).

choice of his course of action, "either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to any reasonable man." *Id.* Recklessness also differs from that negligence which consists of intentionally doing an act with knowledge it contains a risk of harm to others. To be reckless, a person must "recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless conduct and negligent conduct is a difference in degree of risk, but this difference of degree is so marked as to amount substantially to a difference in kind." *Id.* *Gibson by Woodall,* 778 S.W.2d at 854, quoting *Farm Bureau Town & Country Ins. Co. v. Turnbo,* 740 S.W.2d 232, 235 (Mo.App. E.D.1987) (some internal punctuation omitted).

▮▮▮ "A motion to set aside a judgment cannot prove itself." *Dallas–Johnson Properties, Inc. v. Hubbard,* 823 S.W.2d 5, 6 (Mo.App. E.D.1991). "[I]f the motion contains sufficient allegations of fact for its support, the motion thus must be verified, or supported by affidavits or sworn testimony produced at the hearing on the motion." *Id., quoting Hernandez v. Westoak Realty & Inv., Inc.,* 549 S.W.2d 906, 909 (Mo.App. E.D.1977). Here, Hubbell provided support for its motion by attaching the affidavit of its agent, Mulvihill.

Hubbell argues, based on Mulvihill's affidavit, that its failure to timely defend the underlying lawsuit was mere negligence because "the press of other matters caused [Mulvihill] to miss the deadline" and his conduct "was the result of a mistake." It points out that Mulvihill was also "hit with a case of the shingles" just prior to the deadline. To fully assess whether Mulvi-

hill's conduct was mere negligence or instead amounted to either intentional or reckless behavior, we look to various factors, including his education and familiarity with legal processes.

This court, in *In re Marriage of Williams,* 847 S.W.2d at 901, looked to the movant's educational level and her familiarity with lawyers to assess whether her conduct in failing to defend was simply negligent. Because she was a registered nurse, was familiar with marital problems, and had been in contact with a lawyer about her marital problems for over a year before her husband's petition for dissolution was filed, we found that "[h]er actions could well be viewed by a trial court as more than a series of mishaps but, rather, as conduct 'lacking in caution' and as 'deliberately courting danger' in the futile hope and expectation that the [other party] would not go forward with the case." *Id.*

Here, Mulvihill is an attorney who routinely handles these types of matters. He had actual notice that the lawsuit had been filed and that Hubbell had been properly served. Mulvihill even notified Hubbell's usual outside counsel about the matter but did not retain him to defend the case and knew that he would not file a responsive pleading until he had been directed to do so. As a licensed attorney familiar with litigation practice, Mulvihill knew that if Hubbell did not timely file an answer or other responsive pleading a default judgment could be entered against it. Knowing all of this, Mulvihill "failed to follow-up," even after Quinn sent him several reminders about the need to timely defend the lawsuit.

Mulvihill's inaction under these circumstances amounts to more than "just the negligent mishandling of the paperwork" or "inadvertence" as Hubbell contends. *See Krugh v. Hannah,* 126 S.W.3d 391, 393 (Mo. banc 2004). Instead, it "indicates a

conscious choice to ignore the summons and suggests recklessness designed to impede the judicial process." *See Bredeman v. Eno,* 863 S.W.2d 24, 26 (Mo.App. W.D. 1993). The trial court might also have been more sympathetic to Mulvihill's claim of sickness if it had also prevented him from completing the acquisition he referred to or from attending the depositions of other high ranking corporate officials.

In short, Mulvihill was not a "non-managerial, clerical employee" who acted "without realizing the consequences of his [ ] actions." *See Pyle v. Firstline Transp. Sec., Inc.,* 230 S.W.3d 52, 60 (Mo.App. W.D.2007). Mulvihill was Assistant General Counsel for Hubbell's parent corporation. Even if he were not a licensed attorney, "a management level employee, or a registered agent of a corporate entity, [ ] should be assumed to have a better idea of the potential gravity of a litigation summons and the need for quick action." *Id.* "[A] mistake by upper-level management employees, or by individual defendants, is more likely to be presumed reckless or intentional." *Id.*

Mulvihill's affidavit clearly reveals that defending the underlying lawsuit was not a priority for him and that he simply chose "[a] course of action with knowledge of the serious danger that a default judgment could result." *See Williams,* 847 S.W.2d at 902. This combination of intentional and reckless behavior did not constitute good cause to set the default aside.

"The Rule 74.05 [ (d) ] conditions, 'good cause' and 'meritorious defense,' are in the conjunctive and even if a movant shows a meritorious defense, if good cause is not also established, 'the trial court does not abuse its discretion by failing to set aside the judgment.' " *Id.* at 899 (quoting *Robson v. Willers,* 784 S.W.2d 893, 896 (Mo. App. W.D.1990)). Because the trial court's decision to deny Hubbell's motion was sup-ported by Hubbell's failure to prove good cause, we need not address Hubbell's claim that it also asserted a meritorious defense. Point II is denied, and the trial court's order denying Hubbell's motion to set aside the default judgment is affirmed.

BATES, P.J., and BARNEY, J., Concur.