

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| DAVID STEELE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD85681 (Consolidated with WD85863) |
| | ) | |
| JOHNSON CONTROLS, INC., | ) | Opinion filed: June 20, 2023 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF GENTRY COUNTY, MISSOURI
THE HONORABLE COREY K. HERRON, JUDGE**

Division Three: Janet Sutton, Presiding Judge,
Cynthia L. Martin, Judge and Edward R. Ardini, Jr., Judge

David Steele ("Steele") filed suit against his employer Johnson Controls, Inc.

("JCI"), alleging workers' compensation retaliation and discrimination under section

287.780, RSMo.[1] After JCI failed to answer or otherwise respond to the petition, Steele

moved for a default judgment. The Circuit Court of Gentry County granted the motion and

entered a default judgment against JCI awarding Steele compensatory and punitive

damages. Eight days later, JCI filed a motion to set aside the default judgment pursuant to

---

[1] All statutory references are to RSMo 2016 as currently supplemented. All rule references are to
the Missouri Supreme Court Rules (2023) unless otherwise noted.

Rules 75.01, 74.05(d), and 74.06(b)(1). The trial court denied the motion to set aside, and denied JCI's subsequent motion for new trial.

JCI appeals, asserting that the trial court erred in refusing to set aside the default judgment and in awarding Steele punitive damages. For the reasons stated below, we affirm.

**Factual and Procedural Background**

On November 15, 2021, Steele filed a petition against his employer JCI, alleging that after Steele suffered a workplace injury, JCI "retaliated against [him] and discriminated against [him]" for exercising his right to workers' compensation benefits, in violation of section 287.780.[2] Steele sought compensatory and punitive damages. As to the latter, Steele alleged that JCI's "discrimination and retaliation against [him] was willful and deliberate and with reckless disregard for the rights of [Steele], thereby entitling [him] to exemplary and/or punitive damages in an amount that will punish [JCI] and deter [JCI] and others from like conduct in the future."

JCI was served with Steele's petition on December 2, 2021. On March 2, 2022, with no answer or responsive pleading having been filed by JCI, Steele filed a "Motion for Entry of Default Judgment and Award of Damages" pursuant to Rule 74.05(a), which provides that when a defendant "has failed to plead or otherwise defend as provided by these rules, upon proof of damages or entitlement to other relief, a judgment may be entered against the defaulting party." Steele requested the trial court "hear [his] damage evidence and enter

---

[2] Steele's petition also alleged that he was wrongfully discharged from his employment at JCI. Steele later testified that he was "medically retired" from JCI, and was on long-term disability.

2

default judgment and an award of damages in a single judgment following the hearing on [his] damages."

On May 5th, the trial court conducted a damages hearing. Having failed to answer the petition, JCI was not entitled to and did not receive a service copy of the notice of hearing, and did not appear. Steele testified that he was "injured on the job" in November 2017 when he fell "backwards on [his] back" on the concrete production floor, causing a compression fracture in his back, a hairline fracture in his pelvis, and an injury to his left wrist. Steele reported his injuries "through the workers' compensation at Johnson Controls." Steele testified that JCI required him to return to work the day after his injury, notwithstanding that he advised JCI he was in "[e]xcruciating pain" and had a medical appointment. For taking an absence immediately after his injury, Steele received "an attendance point, which was discipline." When he later discussed the attendance point with human resources, he was told the attendance point could not be removed "because it would be the first work injury in 7 years, and they would lose their safety bonuses because of [Steele]."

When Steele returned to work with "sedentary light duty" work restrictions, he was forced to sit in a hard chair in the lunch room or a dirty office, and not given any work to do other than to "just star[e] at the wall." One of his supervisors criticized Steele and told him he was "milking" his injury.

After Steele was released to work with different weight restrictions, JCI "put [him] back on the production floor" on the "subassembly panel line," which caused Steele extreme pain. Steele, while crying, informed a supervisor that the assigned job was causing

3

him pain, to which the supervisor responded that Steele "had to do what [he] was instructed to do." On a separate occasion, Steele was required to operate a punch press that was outside of his weight restrictions, and when he advised his supervisor, she "got very angry with [him]." This supervisor sent him to the panel line, and, while "[a]ll the employees were watching," had employees weigh parts of the equipment "[t]o see if [Steele had] violated [his] work restrictions."

Steele testified that he was falsely accused of violating work rules and was placed on probation as a result. He also stated that when he expressed concern to a supervisor that one of his assigned tasks violated his work restrictions, he was advised that if he "didn't do what [he] was told," he would be suspended pending an investigation. In mid-2020, Steele was informed by his doctor that his "medical condition was such that [Steele was] not going to be able to return to work." Steele was placed on short-term disability, then long-term disability, and at the time of the hearing he was "still on the long-term disability." Steele testified that after he was injured in 2017, he came to work every day feeling like he was "ostracized," "criticized," "under the microscope," and "under the gun."

At the conclusion of the damages hearing, the trial court found JCI was in default and entered judgment in favor of Steele pursuant to Rule 74.05. The trial court found the facts in Steele's petition were admitted and, upon "consideration of the evidence presented on damages," awarded Steele $300,000 in compensatory damages and $600,000 in punitive damages.

On May 13, 2022—eight days after the judgment was entered—JCI filed a motion to set aside the default judgment pursuant to Rule 75.01 (the "trial court retains control

4

over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time"), Rule 74.05(d) (a default judgment may be set aside upon a motion filed within one year of the default judgment's entry that states "facts constituting a meritorious defense and for good cause shown"), and Rule 74.06(b)(1) (the court may relieve a party from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect" upon a motion filed within one year after the judgment was entered).

JCI asserted in its motion that pursuant to Rule 74.05(d), there was good cause to set aside the default judgment in that its registered agent for service of process mislabeled the service documents and routed them to the incorrect legal department at JCI. As for its meritorious defense, JCI asserted Steele's allegations were meritless, and denied wrongdoing and liability. JCI also asserted that, "upon information and belief, [Steele] cannot show he was retaliated against by JCI as he still works at the facility." JCI's motion alternatively relied on Rules 75.01 and 74.06(b)(1) to urge setting aside the default judgment, but argued only the standards for relief set forth in those Rules without reference to an authority for reliance on the Rules to set aside a default judgment.

Attached to JCI's motion to set aside was the affidavit of Tammara Lovett ("Lovett"), JCI's in-house counsel and "Executive Director, Labor and Employment Law." In her affidavit, Lovett stated that between January and July 2021, she and Steele's counsel corresponded about Steele's "threatened litigation." She stated that on December 2, 2021, JCI was served with Steele's petition through its registered agent for service of process, CT Corporation, and that CT Corporation "did not mark [Steele's] case as 'employee

5

litigation' (as all workers' compensation retaliation cases are marked) but, rather as 'Workers' Compensation' and assigned the case to [the] 'Workers Compensation' team." The Workers' Compensation team is in a separate department than "personnel who are responsible for labor and employment matters, such as workers' compensation retaliation cases." According to Lovett, "JCI's workers' compensation team reviewed the documents, recognized the matter was not a workers' compensation case, and forwarded it to Jennifer Ellis, an in-house labor and employment attorney for JCI." Lovett stated that "Ms. Ellis saw the incorrect designation and believed the documents had been misrouted to her," and thus "[t]he service documents never made their way to [her (Lovett)], the attorney responsible for the matter." Lovett asserted that, "[a]s further evidence of this, JCI's internal service of process monitoring system, ONIT, showing [sic] no evidence of Plaintiff's petition on the system."

Relating to JCI's meritorious defense, Lovett stated that "JCI denies all allegations of retaliation made by Plaintiff in the Petition. Plaintiff was never disciplined nor retaliated against because of his workers' compensation claim. In fact, Plaintiff is still employed at JCI."

Steele filed an opposition to JCI's motion to set aside the default judgment, and a motion to strike portions of Lovett's affidavit on the grounds that parts of her testimony were hearsay and irrelevant.[3]

---

[3] The trial court did not rule on the motion to strike.

On July 7, 2022, the trial court held a hearing on JCI's motion to set aside. JCI did not present any evidence at the hearing. The parties argued their positions and the trial court took the matter under advisement.

The following day, JCI filed a reply in support of its motion to set aside the default judgment. Attached to JCI's reply was the affidavit of Jennifer Ellis ("Ellis"), an "in-house labor and employment attorney for JCI." Ellis stated that on December 3, 2021, she "received a system-generated email indicating [she] had been added to the pending Steele matter in the Onit (SOP) system"; "[i]n the Notes section of the email, the case was designated as 'WC,'" which she understood to mean "Workers' Compensation"; and she concluded that she "was incorrectly added to the matter because it was a workers' compensation case." Ellis stated that, because she was "not responsible for workers' compensation matters, [she] did not look further into the case."

Ellis stated that the "service documents were not attached to the system-generated email," she "never received the service documents," and did not review them until after she became aware of the "Court's Order on the Motion for Default." She then stated that "[b]ecause [she] believed the service documents were already properly with the correct legal department covering workers' compensation claims, [she] mistakenly did not send the documents to Tammara Lovett, the attorney who would have been responsible for the pending matter." Finally, Ellis stated that she "never would have disregarded the system-generated email if [she] knew the case had been mislabeled and was actually meant for [her] department." Ellis provided no testimony relating to JCI's "meritorious defense."

7

On July 13, 2022, the trial court denied JCI's motion to set aside the default judgment, finding JCI failed to show good cause to set aside the judgment, failed to present sufficient proof of a meritorious defense, and "failed to show excusable neglect justifying an order setting aside the judgment."

On August 12, 2022, JCI filed a motion for new trial, requesting the trial court hold a new hearing on JCI's motion to set aside the default judgment, or alternatively, "a new hearing specifically on the Court's determination of damages."[4] JCI attached to its motion the affidavits of five current JCI employees and one former JCI employee. Each affiant stated he or she was personally familiar with Steele and had worked with him on many occasions. The affiants denied or refuted the specific allegations in Steele's petition.

Relating to its request for a new hearing on damages, JCI asserted that the compensatory and punitive damage awards were not supported by the evidence, were clearly excessive, and constituted a manifest injustice. JCI claimed that "because there was insufficient evidence to support the compensatory damage award, the punitive damage award similarly fails," and that the punitive damage award was "excessive" and "indicate[d] 'a clear absence of the honest exercise of judgment.'"

The trial court denied JCI's motion for new trial. Although it did not describe the basis for its denial, the trial court cited *Irvin v. Palmer*, 580 S.W.3d 15 (Mo. App. E.D. 2019) in its denial order.

---

[4] On the same date, JCI filed a Request for Findings of Fact and Conclusions of Law pursuant to Rule 73.01. The trial court denied that request, and JCI has not appealed that ruling.

8

JCI appeals, asserting the trial court erred in refusing to set aside the default judgment and in awarding Steele punitive damages.

## Trial Court's Refusal to Set Aside the Default Judgment

JCI moved to set aside the default judgment under three authorities: Rule 75.01 (modification of judgment for good cause during thirty-day period after entry), Rule 74.05(d) (setting aside default judgment on meritorious defense and for good cause shown), and Rule 74.06(b)(1) (relief from final judgment for mistake, inadvertence, surprise, or excusable neglect). Correspondingly, JCI argues on appeal that the trial court erred in refusing to set aside the default judgment pursuant to Rule 75.01 (Point I), Rule 74.05(d) (Points II and III), and Rule 74.06(b)(1) (Point IV). However, we only address JCI's arguments relating to Rule 74.05(d), as that Rule provides the standard specifically applicable to setting aside default judgments. *See Martin v. Martin*, 196 S.W.3d 632, 634-36 & n.3 (Mo. App. W.D. 2006) (where the defendant filed alternative motions to set aside a default judgment under Rules 75.01, 74.05(d), and 74.06(b)(1), we limited our analysis to examining "whether the trial court abused its discretion when it considered the factors stated in Rule 74.05(d)," noting that "the alternative motions sought the remedy of a motion to set aside, [therefore] despite their various bases, we must be controlled by those principles applicable to an appeal from a motion to set aside a default judgment" (internal marks omitted)).[5]

---

[5] Accordingly, Point I (challenging the trial court's refusal to set aside the default judgment pursuant to Rule 75.01) and Point IV (challenging the trial court's refusal to set aside the default judgment pursuant to Rule 74.06(b)(1)) are denied. Neither *Martin*, nor this opinion, should be read, however, to foreclose a party's right to seek relief from a judgment (including a default

9

In its second and third points, JCI asserts the trial court erred in refusing to set aside

the default judgment pursuant to Rule 74.05(d). "Under Rule 74.05(d), a party may seek

to set aside a default judgment by demonstrating 'facts constituting a meritorious defense

---

judgment) on the grounds set forth in Rule 74.06(b)(2) (the court may relieve a party from a judgment for fraud, misrepresentation, or other misconduct of a party), Rule 74.06(b)(3) (the court may relieve a party from a judgment that is irregular), Rule 74.06(b)(4) (the court may relieve a party from a judgment that is void), or Rule 74.06(b)(5) (the court may relieve a party from a judgment that has been satisfied, released, or discharged, or because a prior judgment on which it is based has been reversed or vacated). JCI has not sought relief from the default judgment pursuant to any of these Rules. Moreover, even if contrary to our holding a party could seek to set aside a default judgment pursuant to Rule 74.06(b)(1) (permitting relief from a judgment due to "mistake, inadvertence, surprise, or excusable neglect"), that standard is more strident than the standard for setting aside a default judgment set forth in Rule 74.05(d). *Cotleur v. Danziger*, 870 S.W.2d 234, 236 (Mo. banc 1994) (holding that as between the standard for seeking relief in Rule 74.05(d) and the standard for seeking relief in Rule 74.06(b), the standard in the latter Rule "is the highest standard," "giving effect to the interests in stability of final judgments and precedent").

The *obiter dictum* statement in *Endless Distribution, LLC v. Lake Breeze Farms, LLC*, 657 S.W.3d 319, 324 n.8 (Mo. App. W.D. 2022) suggesting that a Rule 75.01 motion can be filed "for up to 30 days after entry of default judgment challenging the damages award or entry of default judgment in its entirety" should not be followed. A party against whom a default judgment has been entered cannot appeal the default judgment, except in the very limited circumstance where an appellant challenges the trial court's subject matter jurisdiction. *Wooten v. Wentworth Entm't Grp., LLC*, 552 S.W.3d 118, 123 (Mo. App. W.D. 2018) ("A default judgment cannot, itself, be appealed."); *Moore v. Crocker*, 643 S.W.3d 926, 928 (Mo. App. E.D. 2022) ("Appellate courts have authority to consider a direct appeal from a default judgment only in the limited circumstances where an appellant challenges the circuit court's subject matter jurisdiction."); *Robertson v. Rosner*, 641 S.W.3d 436, 440-41 (Mo. App. W.D. 2022) (explaining that a challenge to the sufficiency of the petition cannot be raised on direct appeal from a default judgment, and only challenges to the trial court's subject matter jurisdiction can be raised on direct appeal from a default judgment). It follows that a party against whom a default judgment has been entered has no authority to file a post-judgment motion pursuant to Rule 75.01, or post-trial motions authorized by any other Rule. Consistent with this observation, Rule 74.05(d) provides that a motion to set aside a default judgment, even if filed within thirty days of the judgment's entry, "is an independent action and not an authorized after-trial motion . . . ." Thus, a party against whom a default judgment has been filed must file a motion to set aside the default judgment pursuant to Rule 74.05(d) to secure an independent judgment granting or denying the motion that can then be appealed. *See Wooten*, 552 S.W.3d at 123; *Moore*, 643 S.W.3d at 928; *Robertson*, 641 S.W.3d at 440 (holding that the "typical path" for appellate review of a default judgment is "filing a motion to set aside the default judgment under Rule 74.05(d), and then appealing from a judgment denying that motion").

and for good cause shown.'" *Robertson v. Rosner*, 641 S.W.3d 436, 439 (Mo. App. W.D. 2022). "Thus, in order to set aside a default judgment under Rule 74.05(d), the moving party must establish (1) a meritorious defense to the suit; (2) good cause for failing to respond to the petition; and (3) that the motion was filed within a reasonable time not to exceed one year."[6] *Id.* (internal marks omitted).

"[A] motion to set aside a default judgment is not a self-proving motion." *Agnello v. Walker*, 306 S.W.3d 666, 673 (Mo. App. W.D. 2010). "The motion must be verified or supported by affidavits or sworn testimony produced at the hearing on the motion."[7] *Bryant v. Wahl*, 502 S.W.3d 9, 13 (Mo. App. W.D. 2016). "The movant in a motion to set aside a default judgment bears the evidentiary burden of proving entitlement to the relief requested." *Agnello*, 306 S.W.3d at 673.

We review the denial of a Rule 74.05(d) motion to set aside a default judgment for abuse of discretion. *In re Marriage of Callahan*, 277 S.W.3d 643, 644 (Mo. banc 2009). "Although our decisions often state that a trial court has broader discretion to grant a motion to set aside a default judgment than to deny it because of the distaste our system holds for default judgments, ultimately, the decision is left to the sound discretion of the trial court and should be overturned only if that discretion is abused." *First Cmty. Bank v. Hubbell Power Sys., Inc.*, 298 S.W.3d 534, 537 (Mo. App. S.D. 2009) (internal citations

---

[6] It is undisputed that JCI timely filed its motion to set aside the default judgment.

[7] Though this requirement is not expressed in Rule 74.05(d), Rule 55.28 provides that "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties . . . ."

11

and marks omitted). "A trial court abuses its discretion if the ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Bryant*, 502 S.W.3d at 13 (internal marks omitted). "[U]nder [this] standard of review, we do not determine whether we would have reached the same decision as the trial court." *Coble v. NCI Bldg. Sys., Inc.*, 378 S.W.3d 443, 451 (Mo. App. W.D. 2012). "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Id.*

### *Point II - Good Cause*

In its second point, JCI asserts the trial court "erred in refusing to set aside the default judgment pursuant to Rule 74.05(d) for alleged failure to show 'good cause.'" JCI argues that it had good cause for failing to answer Steele's petition "in that the failure resulted from the mislabeling and misrouting of the service documents and not an intentional or reckless design to impede the judicial process." We disagree.

Rule 74.05(d) defines "[g]ood cause" to include "mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." "Negligent conduct can constitute 'good cause,' whereas reckless conduct does not." *Coble*, 378 S.W.3d at 448. "A person acts negligently if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency." *Id.* (internal marks omitted).

Recklessness, on the other hand, "includes making a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with

12

knowledge of the facts which would disclose the danger to a reasonable [person]." *Vogel v. Schoenberg*, 620 S.W.3d 106, 111-12 (Mo. App. W.D. 2021) (internal marks omitted). "Intentional indifference, meaning that an individual does not care about the consequences of his or her actions, can also constitute recklessness." *Id.* at 112 (internal marks omitted); *see also Hubbell Power Sys.*, 298 S.W.3d at 539 ("One acts recklessly if he or she does so with indifference to consequences" and "[i]n the context of default judgments, 'reckless' means lacking in caution or deliberately courting danger" (internal marks omitted)). "In other words, recklessness involves a deliberate choice to risk the possibility of a default judgment." *Vogel*, 620 S.W.3d at 112 (internal marks omitted).

"In reviewing a trial court's determination of whether a party established good cause under Rule 74.05(d), we review the evidence in the light most favorable to the trial court's ruling, and we only consider whether there was a sufficient factual basis for the trial court's determination under the totality of the circumstances." *Solomon v. St. Louis Circuit Attorney*, 640 S.W.3d 462, 478 (Mo. App. E.D. 2022). In close cases, deference must be given to the trial court's determination as to whether conduct is excusable or reckless. *Saturn of Tiffany Springs v. McDaris*, 331 S.W.3d 704, 709-10 (Mo. App. W.D. 2011); *see also Hubbell Power Sys.*, 298 S.W.3d at 539.

JCI asserts that its failure to answer Steele's petition "did not result from any intentional or reckless design to impede the judicial process," but was caused by "[t]he mislabeling of the service documents, as 'Workers' Compensation,' by CT Corporation," which resulted in "a failure to get the Petition to a JCI managerial employee with responsibility to address it." However, the evidence JCI submitted to support its "good

13

cause" argument was internally contradictory, and failed to explain what actually happened to the service documents. Viewing this evidence in the light most favorable to the trial court's ruling, we find there was a sufficient factual basis for the trial court to find JCI failed to show good cause for its default.

JCI submitted the affidavits of Lovett—"Executive Director, Labor and Employment Law"—and Ellis—an "in-house labor and employment attorney." Lovett and Ellis provided conflicting testimony regarding how Ellis was assigned to Steele's case, what documents Ellis received and whether she reviewed them, and whether Steele's matter was entered into "ONIT," JCI's service of process system/software. Lovett stated that the workers compensation team reviewed Steele's case documents and sent them to Ellis, but Ellis believed the documents had been misrouted to her; however, Ellis stated she received "a system-generated email indicating [she] had been added to the pending Steele matter in the Onit (SOP) system," the service documents were not attached to the email, and she never received the service documents. Ellis then contradicted herself by stating she "mistakenly did not send the documents to Tammara Lovett," suggesting that Ellis did, in fact, receive the service documents. Moreover, Lovett stated that "JCI's internal service of process monitoring system, ONIT, show[ed] no evidence of [Steele's] petition on the system," whereas Ellis stated that the day after JCI was served, she received a "system-generated email" indicating she had been added to the "pending Steele matter in the Onit (SOP) system."

Based on the above, it is unclear how JCI handled Steele's service documents and to what extent Steele's case was entered into JCI's internal case monitoring system. And

14

although JCI relied on the affidavits of Lovett and Ellis in arguing that its failure to respond to Steele's petition was simple negligence as opposed to recklessness, the trial court was not required to credit Lovett's or Ellis's testimony. *See Vogel*, 620 S.W.3d at 113 ("the trial court was free to disbelieve the assertions in [the] affidavit offered to establish good cause"); *Coble*, 378 S.W.3d at 449 ("Nothing required the trial court to believe the factual assertions in [the] affidavit, or required it to find that the affidavit established good cause."). This is especially true here, given the nature of the contradictory testimony described above. *See Solomon*, 640 S.W.3d at 478-79 (affirming the trial court's finding that no good cause existed under Rule 74.05(d) where affidavit of defense attorney was vague and failed to adequately explain why the responsive pleading was not timely filed, and attorney provided contradictory testimony at the hearing as to why she did not timely file the pleading); *Coble*, 378 S.W.3d at 449 (noting there "were specific reasons for the trial court to have been skeptical of [the defendant's] showing of good cause," including that the affidavit was "vague" and "offer[ed] no explanation as to what actually happened to the documents at issue").

Moreover, Ellis was an in-house attorney responsible for defending civil employment suits, and thus was familiar with the consequences of failing to respond to a petition. The trial court could have reasonably determined that her failure to investigate why she was added to the Steele matter or to take *any* action to ensure that someone was taking responsibility for the matter demonstrated a conscious indifference to the risk of the possibility of default. *See Solomon*, 640 S.W.3d at 479 ("the trial court could have reasonably found the failure of Ms. Blumenthal (a licensed attorney responsible for

15

defending civil suits filed against Defendant under the Sunshine Law) to file a timely responsive pleading to the amended petition was not an act of negligence but instead was a deliberate, conscious, and reckless choice to risk the possibility of a default judgment"); *Hubbell Power Sys.*, 298 S.W.3d at 540-41 (in-house attorney familiar with litigation practice knew or should have known of the risk of the possibility of a default judgment if a timely responsive pleading was not filed).

Finally, we are not persuaded by JCI's attempts to cast blame for its default on CT Corporation and Steele's counsel. Although JCI contends that CT Corporation "mislabel[ed]" the service documents as "Workers' Compensation," which resulted "in the documents going to the wrong legal department," Steele's case was forwarded to an attorney in the "correct" legal department the day after JCI was served, according to Ellis. And although Steele's counsel and Lovett had corresponded prior to Steele filing his lawsuit, Steele's counsel was under no obligation to advise Lovett that JCI was in default and Steele intended to seek a default judgment. *See Irvin v. Palmer*, 580 S.W.3d 15, 20-21 (Mo. App. E.D. 2019) ("a party in default has no right to notice of the default proceedings," and an attorney has no "ethical duty of candor" to inform opposing counsel of impending default proceedings).

For the above reasons, we find the trial court did not abuse its discretion in denying JCI's motion to set aside the default judgment due to lack of good cause.

Point II is denied.

*Point III - Meritorious Defense*

In Point III, JCI asserts the "trial court erred in refusing to set aside the default judgment" because JCI "showed a 'meritorious defense.'"[8] JCI argues that the Lovett affidavit attached to its motion to set aside the default judgment "present[ed] support that 'would defeat or adversely affect the plaintiff's claim,'" and further argues that the affidavits attached to its motion for new trial "reinforce[d] JCI's showing" of its meritorious defense. However, we find the trial court did not abuse its discretion in denying either JCI's motion to set aside the default judgment or the motion for new trial.

First, we find no abuse of discretion in the trial court's denial of JCI's motion to set aside the default judgment. In denying the motion to set aside, the trial court found that JCI "failed to present sufficient proof of a meritorious defense." The sole evidence of JCI's meritorious defense to support its motion to set aside was one paragraph in the Lovett affidavit, which stated:

> JCI denies all allegations of retaliation made by Plaintiff in the Petition. Plaintiff was never disciplined nor retaliated against because of his workers' compensation claim. In fact, Plaintiff is still employed at JCI.

This testimony consists of no more than a conclusory, general denial, and does not set forth the specific facts required to establish a meritorious defense.

To establish a meritorious defense, a defendant is required to demonstrate "an arguable theory that would defeat the plaintiff's claim," and support that theory with sworn

---

[8] "Failure to establish either the 'meritorious defense' element or the 'good cause' element of a motion pursuant to Rule 74.05(d) is fatal to the motion." *Saturn of Tiffany Springs*, 331 S.W.3d at 709. Thus, although our conclusion as to Point II renders unnecessary our resolution of Point III, we nonetheless address JCI's claims relating to its meritorious defense.

17

evidence setting forth particular facts. *Bryant*, 502 S.W.3d at 14; *Saturn of Tiffany Springs*, 331 S.W.3d at 713 ("[O]ur Supreme Court has instructed that it requires motions to set aside default judgments to be supported by verification, by affidavits, or by sworn testimony, ***establishing facts (not conclusory statements)*** sufficient to permit a trial court to find good cause and a meritorious defense." (emphasis added)); *In re J.P.B.*, 186 S.W.3d 767, 769 (Mo. App. W.D. 2006) (Where "the defense is of a factual rather than legal nature, [the defendant] must offer particular facts, which, if proven, would constitute a meritorious defense.").

A conclusory or general denial of the plaintiff's allegations fails to set forth the minimum facts necessary to demonstrate an arguable theory that would defeat the plaintiff's claim. *See Magee v. Magee*, 904 S.W.2d 514, 519 (Mo. App. W.D. 1995) (noting that "[m]ere assertions of conclusions and speculation do not constitute a meritorious defense," and finding the defaulting party's "conclusory denials fail[ed] to set forth even the minimum facts necessary to support a determination that [he] had an arguable theory of defense to the claims" raised by the non-defaulting party); *see also In re Marriage of Millsap*, 559 S.W.2d 69, 71 (Mo. App. 1977) ("A general denial is not tantamount to a plea setting forth a meritorious defense when determining whether an order or judgment entered against a defaulting party should be vacated or set aside.").

Here, the Lovett affidavit did not contain specific facts to support JCI's theory of defense. Rather, Lovett simply asserted a blanket denial of Steele's allegations of "discipline" and "retaliation," which fell well-short of the requirement imposed on JCI to set forth an arguable theory of a meritorious defense that would defeat Steele's claims. *See,*

18

*e.g.*, *Magee*, 904 S.W.2d at 519. And although Lovett testified that Steele was "still employed by JCI," such fact does not preclude a finding of liability on the part of JCI under section 287.780[9] and is, therefore, insufficient to establish a meritorious defense. *See In re J.P.B.*, 186 S.W.3d at 770 (the defaulting party failed to establish a meritorious defense to the allegations of child abandonment and neglect, where his "recited facts" disputed the allegations of abandonment, but he "failed to offer any facts to dispute the neglect allegations").

Perhaps recognizing this deficiency in its evidence, JCI submitted the affidavits of five current and one former JCI employee in support of its motion for new trial. While these affidavits set forth facts specifically denying and refuting the allegations in Steele's petition, we nonetheless find the trial court did not abuse its discretion in denying JCI's motion for new trial.[10]

In denying JCI's motion for new trial, the trial court cited *Irvin v. Palmer*, 580 S.W.3d 15 (Mo. App. E.D. 2019). In *Irvin*, the trial court overruled the defendants' motion to set aside a default judgment, finding they "'failed to show the existence of a meritorious defense' because the motion had no affidavit attached, it was not verified or signed by the [defendants], and because the [defendants] failed to adduce any testimony whatsoever at

---

[9] "Any employee who has been discharged **or discriminated against** [for exercising any of his or her rights under this chapter when the exercising of such rights is the motivating factor in the discharge **or discrimination**] shall have a civil action for damages against his or her employer." § 287.780 (emphasis added).

[10] "The standard of review for an order denying a motion for new trial is abuse of discretion." *In re H.L.L.*, 179 S.W.3d 894, 896 (Mo. banc 2005).

19

the hearing." 580 S.W.3d at 20. The defendants filed a motion to reconsider, attaching an affidavit and supporting document, which was also denied. *Id.* On appeal, the Eastern District of this Court found that the trial court did not abuse its discretion in denying the motion to reconsider. *See id.* at 25. The Eastern District noted that the defendants "cite[d] no authority obligating the trial court to address their additional evidence in determining whether they had met the pleading requirements of Rule 74.05(d)," and that nothing in the record reflected that the evidence attached to the motion for reconsideration was unavailable at the time the defendants filed their motion to set aside the default. *See id.* (quoting *Hinton v. Proctor & Schwartz, Inc.*, 99 S.W.3d 454, 459 (Mo. App. E.D. 2003)) (internal marks omitted). The Eastern District concluded that "Rule 74.05(d) provides for the setting aside of a default judgment by the trial court when the party requesting such relief meets certain requirements in the ***motion*** requesting such relief, not in a motion for reconsideration after a judgment denying the motion requesting such relief." *See id.* (emphasis in original).

We find the reasoning of the Eastern District persuasive. Here, like in *Irvin*, JCI has not asserted—and there is nothing in the record to indicate—that the later-submitted affidavits could not have been submitted with the motion to set aside the default judgment. The affiants were JCI employees, and they described events that occurred years prior to the filing of the motion to set aside. Thus, the record reflects that this evidence was available to JCI when it filed its motion to set aside and at the hearing on the motion, and JCI has not explained why it failed to present this evidence at that time. Although JCI asserts that "Rules 78.01 and Rules 78.08 permit consideration of additional affidavits as part of a new

20

trial motion," JCI "cite[s] no authority obligating the trial court to address [JCI's] additional evidence in determining whether [JCI] had met the pleading requirements of Rule 74.05(d)." *See Hinton*, 99 S.W.3d at 459.

JCI had multiple opportunities to present evidence in support of its meritorious defense, including when it filed the motion to set aside, at the hearing on the motion, and when it filed its reply in support of the motion. Although JCI sought a fourth "bite at the apple" to submit evidence establishing its meritorious defense, the trial court was under no obligation to allow JCI to present additional evidence when such evidence was available to JCI during each of those previous opportunities. Thus, we find the trial court did not abuse its discretion in denying JCI's motion for new trial. *See Irvin*, 580 S.W.3d at 24 ("Since trial courts are vested with wide discretion in passing upon motions for new trial, we find no abuse of discretion in the trial court's denial of the [defendants'] motion to reconsider".); *Hinton*, 99 S.W.3d at 459.

Point III is denied.

## Punitive Damages Award

In its fifth and sixth points, JCI argues the trial court erred in awarding Steele punitive damages because the award violates section 510.261.7. JCI concedes that it did not "present [these] damages issue[s] to the trial court," and thus seeks plain error review. However, for reasons we explain, JCI is not entitled to seek appellate review, plain or otherwise, of the punitive damage award.

In Points V and VI, JCI asserts the trial court's punitive damages award must be set aside due to a lack of compliance with section 510.261, which became effective August 28, 2020. Section 510.261 enacted stricter standards relating to the recovery of punitive damages. *See Largent v. Pelikan*, 628 S.W.3d 162, 164 (Mo. App. E.D. 2021).

As relevant to JCI's claims on appeal, section 510.261 provides that "punitive damages shall not be awarded unless the claimant proves by clear and convincing evidence that the defendant intentionally harmed the plaintiff without just cause or acted with a deliberate and flagrant disregard for the safety of others." § 510.261.1. Subsection 5 of the statute prescribes the procedure for recovery of punitive damages, including that a claim for punitive damages cannot be made in an initial pleading in a civil action, and instead may only be filed in a later pleading with leave of court. "A trial court may grant leave to file such a pleading only on written motion by the claimant, filed no later than one hundred twenty days prior to the final pretrial conference in the case or, if there is no scheduled pretrial conference, one hundred twenty days prior to the date set for trial, that is supported by affidavits, exhibits, or discovery materials establishing a reasonable basis for the recovery of punitive damages." § 510.261.5. Finally, subsection 7 provides that "[n]o judgment that includes a punitive damage award shall be entered . . . unless the requirements and procedures for a punitive damage award contained in this section . . . are met."

In its fifth point, JCI asserts the trial court plainly erred by awarding Steele punitive damages because the "procedures for a punitive damages award set forth in § 510.261 were not followed." In its sixth point, JCI asserts the trial court plainly erred by awarding Steele

22

punitive damages because there was no "clear and convincing evidence that JCI intentionally harmed [Steele] without just cause or acted with a deliberate and flagrant disregard for the safety of others." Both points raise seemingly routine allegations of trial court error related to the judgment entered in the underlying litigation. "[A]llegations of error relating to [the] underlying judgment are moot unless the default is set aside." *Wooten v. Wentworth Entm't Grp., LLC*, 552 S.W.3d 118, 123 (Mo. App. S.D. 2018) (quoting *Hubbell Power Sys.*, 298 S.W.3d at 538). Though the procedural and evidentiary limitations imposed by section 510.261 may have provided additional support for JCI's contention that it had meritorious defenses to the claims asserted in Steele's petition, JCI did not raise section 510.261 in its motion to set aside the default judgment.[11] *See Wooten*,

---

[11] We are mindful that in *McGee v. City of Pine Lawn*, 405 S.W.3d 582 (Mo. App. E.D. 2013), the Eastern District affirmed the denial of a motion to set aside a default judgment as to liability, but, employing plain error review, reversed the trial court's denial of the motion to set aside the default judgment on the issue of damages because the petition in the underlying litigation sought damages in an unliquidated amount, and the record was devoid of any indication that evidence was ever taken by the trial court to support a damage award. *Id*. at 589. Yet, the court in *McGee* had already found that the defaulting party's motion to set aside the default judgment "failed in every respect to present facts showing a good cause and a meritorious defense." *Id*. at 586.

Though we have no quarrel with *McGee*'s conclusion that relief from a default judgment awarding damages was warranted because the record was devoid of any evidence having been taken to support the award, that relief should not have been provided pursuant to Rule 74.05(d). It is axiomatic that a default judgment cannot be successfully challenged pursuant to a Rule 74.05(d) motion to set aside a default judgment, whether as to liability or damages, unless the standard for same (the demonstration of good cause for the default and a meritorious defense) has been established. Instead, if a defaulting party seeks to challenge a damage award in a default judgment, but is unable to satisfy the standard for setting aside the default judgment set forth in Rule 74.05(d), then the only potential recourse remaining to the defaulting party is a motion pursuant to Rule 74.06(b) for relief from the award of damages in the default judgment on one of the exacting bases authorized by said Rule. However, as previously noted, as between Rule 74.05(d) and Rule 74.06(b), Rule 74.06(b) "requires the highest standard . . . because of the interest in stability of final judgments and precedent." *McGee*, 405 S.W.3d at 587. We believe the result in *McGee* required the defaulting party to file a motion pursuant to Rule 74.06(b)(3) claiming the default judgment was "irregular" in its award of damages. *See* footnote 12, *infra*; *see also Barker v.*

23

552 S.W.3d at 123 (noting that claim on appeal seeking plain error review of the trial court's "legally untenable joint and several judgment" is a challenge to the merits of the petition in the underlying litigation that could be construed as a Rule 74.05(d) meritorious defense, but that would not be considered by the court on appeal because the motion to set aside the default judgment was otherwise properly denied).

Even if JCI's fifth and sixth points on appeal could be interpreted to support a contention that the default judgment was "irregular,"[12] (an issue we need not decide), JCI did not file a Rule 74.06(b)(3) motion seeking relief from the judgment's award of punitive damages on this basis, and the time to do so has expired.[13] A Rule 74.06(b) motion for relief from a judgment is distinct from an independent action to set aside a default judgment pursuant to Rule 74.05(d). We will not entertain on appeal JCI's claims seeking relief from the punitive damage award in the judgment in the underlying case when those claims were never presented to the trial court as meritorious defenses in connection with JCI's motion to set aside the default judgment, or pursuant to a motion claiming an irregularity in the judgment pursuant to Rule 74.06(b)(3). *See, e.g.*, *McGee v. City of Pine Lawn*, 405 S.W.3d

---

*Friendly American, Inc.*, 606 S.W.2d 457, 460 (Mo. App. W.D. 1980) (holding that default judgment taken on evidence beyond the scope of the allegations in the petition raised "a ground to vacate [the] judgment . . . (if at all) as an irregularity patent on the face of the record," relying on Rule 74.32, the predecessor to Rule 74.06(b)(3) addressing relief from irregular judgments).

[12] An irregular judgment for purposes of Rule 74.06(b)(3) "'is one achieved in a manner materially contrary to the law's established procedures for the orderly administration of justice.'" *In re B.K.B.*, 655 S.W.3d 16, 23 (Mo. App. W.D. 2022) (quoting *Lambert v. Holbert*, 172 S.W.3d 894, 898 (Mo. App. S.D. 2005)).

[13] Rule 74.06(c) provides that a motion pursuant to Rule 74.06(b)(3) must be made "within a reasonable time," and "not more than one year after the judgment . . . was entered."

582, 586-87 (Mo. App. E.D. 2013) (holding that claim that default judgment should be set aside pursuant to Rule 74.06(b)(4) because it is void for lack of personal jurisdiction was not preserved for appellate review because the claim was not raised with the trial court).

### Conclusion

For the reasons stated above, we find the trial court did not abuse its discretion in refusing to set aside the default judgment, and the judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.